HELEN STRAUCH, Appellant, *v.* CHARLES APARTMENTS COMPANY, Appellee

(No. 70-110;

Second District—August 25, 1971.

Barclay, Damisch & Sinson, of Chicago, (Loretta Didzerekis, of counsel,) for appellant.

Pretzel, Stouffer, Nolan & Rooney and Timothy J. Gillick, both of Chicago, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal arises from entry of an order of judgment on the pleadings in favor of defendant landlord in a cause of action wherein the plaintiff tenant sought damages for personal injuries allegedly sustained because of the landlord's negligence. Plaintiff had filed a jury demand with her complaint, and the judgment was based on an exculpatory clause in a written lease which the trial court viewed as a complete defense as a matter of law for the defendant landlord.

Helen Strauch, the plaintiff tenant, entered into a two year written lease commencing November 1, 1967, for rental of an apartment in Elmhurst, Illinois, owned by the corporate defendant landlord, Charles Apartments Company. This lease is a Chicago Real Estate Board form for a heated apartment. The only typewritten insertions in it are the date, the names of the parties, the apartment number and street address (the City of Elmhurst and County of Du Page being printed), the commencing and ending dates of the term, the amount of monthly rental, the place of its payment, and the amount of the security deposit. Otherwise, the lease is printed and contains twenty-five provisions, twenty-four of them captioned in margins on each side of the page and set in print finer than the introductory paragraphs containing the typewritten insertions. Paragraph Nine of the lease contains the exculpatory clause

in issue and is captioned in the margin Lessee Waives Damages." Paragraph Nine reads as follows:

"Neither the Lessor nor his agents shall be liable for damages, to the Lessee or to any person claiming through Lessee (nor shall rent be abated) for injury to person or for damage claimed for eviction actual or constructive; this provision includes particularly but not exclusively all claims arising from the building or any part thereof being or becoming out of repair including appurtenances, equipment, furnishings, fixtures or apparatus located in the demised premises or in the building or premises of which said demised premises are a part, or from any act or neglect of Lessor or his agents or of any tenant or occupant of such building or of the premises of which such building is a part, or of the neighboring property."

This paragraph is followed by additional provisions, a number of them favorable to the landlord, such as a right to confess judgment against the tenant, cumulative remedies for the lessor, payment by lessee of lessor's legal expenses incurred or expended because of a breach of the lease agreements, waiver by lessee of all notices and demands which may be required by state statute relating to forcible entry and detainer, and a reservation that lessor's rights are affected only by written waiver.

The complaint alleges that, while exercising due care, plaintiff suffered severe and permanent injuries in falling while traversing the common parking area of the apartment building because of defendant's negligence in carelessly shoveling the snow so as to create an unnatural accumulation of snow and ice and in failing to warn tenants and pedestrians of the unsafe accumulation which had thus been created. Defendant answered, denying all allegations other than the location of the apartments, and filed interrogatories which plaintiff answered. Defendant subsequently filed an amended answer setting up the exculpatory clause in the lease as an affirmative and complete defense.

The record contains two replies by plaintiff to the affirmative defense. The first, filed October 21, 1969, raises the following two propositions:

"(1) There existed between the parties such a disparity of bargaining power that the lessee had no alternative but to accept the document in its tendered form, and

(2) That Paragraph Nine of the lease is as a matter of common law void and against public policy."

Another reply by plaintiff was filed February 24, 1970. On that same date defendant filed a motion for judgment on the pleadings and hearing was had. Plaintiff's February 24th reply is an expanded version of the first reply and alleges additionally that an acute shortage of residential apartments existed in the City of Elmhurst when the lease was executed,

that plaintiff's financial condition did not provide her with flexibility in seeking a tenancy outside Elmhurst, that defendant owned the only known major apartment complex in Elmhurst in that year, that there was disparity of bargaining power between the parties and an existing question of fact whether this disparity was so great as to prevent enforcement of the exculpatory clause in order to prevent great injustice.

The trial court entered judgment on the pleadings for defendant and denied plaintiff leave to file an amended reply to defendant's affirmative defense. The transcript of the hearing, however, seems to indicate that this denial pertains not to the two replies in the record, but to still another reply contemplated by plaintiff and disclosed in the course of the hearing. It would concern the place of injury as related to plaintiff's oral lease for garage space rather than to her written apartment lease with exculpatory clause.

The question here is whether the exculpatory clause contained in Paragraph Nine of the written lease constitutes a defense as a matter of law to plaintiff's cause of action in view of those matters alleged in her replies and argued by her counsel at hearing. The concepts in conflict are the right to freedom of contract as opposed to common law responsibility to use ordinary care to avoid injuring others.

In 1953, the Illinois Supreme Court upheld an exculpatory clause in a business lease saying it was valid and enforceable "* * * unless there is something in the social position or social relationship of the parties opposed to its operation." The court observed that although lessee in that case inferred he had no freedom of choice and had either to accept what was offered or be deprived of the advantages of the relationship, there was "nothing in the record or the circumstances surrounding the parties to bear out this contention. This is a business lease." *Jackson v. First National Bank of Lake Forest* (1953), 415 Ill. 453, 114 N.E.2d 721.

Six years later that court considered an exculpatory clause contained in a residential lease. The plaintiff did not seek strict construction of the clause, conceding it barred her recovery if valid, and argued it was invalid because contrary to public policy. The majority of the court, in an opinion written by Justice Schaefer, sustained the validity of that exculpatory clause, stating the subject was one "that is appropriate for legislative rather than judicial action." A strong dissenting opinion by Justice Bristow and Chief Justice Daily deplored destruction of the concept of negligence and standards painstakingly evolved in case law and stated that only by blind application could *Jackson* be deemed determinative. The dissenters commented that while *stare decisis* has a strong social justification, it should not be used to stifle the growth of the law, and that the basis of voiding exculpatory clauses is that they

are contrary to the public policy of discouraging negligence and protecting those in need of goods or services from being overreached by those with power to drive unconscionable bargains. *O'Callaghan v. Waller & Beckwith* (1959), 15 Ill.2d 436, 441 to 450, 155 N.E.2d 545.

The stage was thus set for a sequence of legislative and judicial action, and in that same year the legislature responded to the *O'Callaghan* decision with an act approved by the Governor which voided, as against public policy, all exculpatory clauses in leases other than in business leases in which a municipal corporation, governmental unit, or corporation regulated by a State or Federal Commission or agency was lessor or lessee. Ill. Rev. Stat. 1969, ch. 80, par. 15a.

The lease in question in this case was executed after the passage of that statute and prior to its invalidation by decision rendered March 27, 1969. On that date, the Illinois Supreme Court struck down the legislative declaration of public policy because it contained a discriminatory classification without any reasonable basis for granting immunity to governmental units and regulated corporations. *Sweney Gasoline & Oil Co. v. Toledo, P. & W. RR. Co.* (1969), 42 Ill.2d 265, 247 N.E.2d 603. In *Sweney* the plaintiff corporation was dealing in storage and distribution of petroleum products and leasing business premises adjacent to the tracks of the defendant railroad. The court said the relationship of lessor and lessee was primarily a matter of private concern, and that exculpatory agreements are ordinarily given effect in the absence of a contrary statute. The court stated: "This accords to the individual the dignity of being considered capable of making and standing by his own agreements." *Sweney Gasoline & Oil Co. v. Toledo, P. & W. RR. Co.*, at 267. It carefully preserved an exception to the flat application of this principle in the following language: "Where there is such disparity of bargaining power between the parties that the lessee has no practical choice but to accept what is offered, enforcement will be denied on the ground that it would result in great injustice * * *" *Sweney Gasoline & Oil Co. v. Toledo, P. & W. RR. Co.*, at 267. The plaintiff lessee did not prevail in that case as the majority of the court said no facts were adduced in support of the inference that lessee had no choice and there was nothing in the relationship of the parties to prevent enforcement. Justice Schaefer dissented this time, saying the *O'Callaghan* case was a very close one and he "would hold that the statute, despite its invalidity, is an expression of public policy which fully justifies this court in now holding, as a matter of common law, that exculpatory clauses in leaseholds are void" but the majority view was as follows: "We have no way of knowing whether the legislature would have enacted the statute without the fatal exceptions; however, we are still of the opinion that this

is a matter for the legislature." *Sweney Gasoline & Oil Co. v. Toledo, Peoria & W. RR. Co.,* 42 Ill.2d at 269.

The legislature promptly demonstrated that it would enact such a statute without the exceptions. It again acted in response to the decision of the Supreme Court, passing a bill at the 1969 session which sought to eliminate the constitutional defect and render all exculpatory clauses invalid. It was vetoed by the Governor on the ground that the public policy of Illinois favors freedom of contract.

Limitations upon freedom of contract have been upheld in many other areas of the law and are perceptively analyzed in *Simmons v. Columbus Venetian Stevens Bldgs.* (1958), 20 Ill.App.2d 1, 155 N.E.2d 372. To that court it appeared that the reasoning assigned, in Illinois and other jurisdictions, to hold void clauses relieving a party from his negligence channels itself into two general categories as follows:

"(1) If the parties who signed the contract were unequal in their bargaining power, and

(2) If there was some social relationship between the parties that would render the contracts unconscionable. Those two ideas have often been so intermingled that it cannot be clearly stated that the court is relying on one or the other of the ideas." *Simmons v. Columbus Venetian Stevens Bldgs.,* 20 Ill.App.2d at 26.

In *Simmons,* the court considered that Illinois has held void, because of the social relationship, contracts relieving the employer from negligence so far as the employee is concerned, and posed a provocative question: "\* \* \* is it any more important that a man should have a safe place to work than that he should have a safe place to live \* \* \*?" *Simmons v. Columbus Venetian Stevens Bldgs.,* 20 Ill.App.2d at 27.

The *Simmons* court discussed the illusory nature of freedom of contract in form leases in these terms: "When such form leases are made it is highly improbable that each of the printed clauses in the leases is subject to negotiation as a matter of offer and acceptance and therefore a matter of freedom of contract." *Simmons v. Columbus Venetian Stevens Bldgs.,* 20 Ill.App.2d at 27. It quoted comment of a legal writer, Professor Freidrich Kessler, Vol. 43 Columbia Law Review, 629, on standard form contracts in insurance matters, which he termed "contracts by adhesion", because the court believed what he had to say is applicable also to the use of standard provisions in leases. Professor Kessler's comment at page 632 is as follows:

"Standard contracts are typically used by enterprises with strong bargaining power. The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural

or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntary to terms dictated by the stronger party, terms whose consequences are often understood only in a vague way, if at all."

The court said:

"This concept does not affect the actuality of consent or the binding nature of the agreement, but it does suggest that there remains little of the element of liberty to contract as one chooses, which is the essence of the public policy of freedom of contract. Does not it also suggest that where, in determining the validity of a particular clause, on one side stands the well established policy of the law that a person is liable for the negligent performance of his duty, and on the other side this fragment of a liberty—often limited by legislation and judicial decision, that perhaps the policy of responsibility should be superior?" *Simmons v. Columbus Venetian Stevens Bldgs.*, 20 Ill.App.2d at 31.

We believe it is unrealistic not to consider whether the right to freedom of contract is more illusory than real in particular relationships.

Notwithstanding the chronological sequence of the judicial decisions and legislative and executive actions outlined above, we are constrained to follow the *O'Callaghan* case in which the Supreme Court declared the existing policy of the State of Illinois with the majority of the court there holding that freedom of contract supersedes the voiding of exculpatory lease clauses as being contrary to public policy.

It is to be specifically noted that in the *Jackson, O'Callaghan,* and *Sweney* cases cited above, the respective plaintiffs were allowed to try their cases and had opportunity to submit evidence as to the disparity of bargaining power. The plaintiff here is entitled to the same opportunity as her pleadings raise a question of fact.

In addition to this, in the instant case there appears to be a question as to whether or not there are in fact two leases. There is no question but that the plaintiff rented the apartment and signed a lease for a monthly rental of $133. Apparently she then entered into another agreement to rent a garage space for an additional $15. Plaintiff alleges that all the defendant did with regard to this was to raise the rental on the copy of its lease from $133 to $148. This was not done on plaintiff's copy of the lease nor does either copy of the lease cover the rental of the garage space. The question then arises as to whether or not there was in fact an oral lease for the rental of the garage space. The question of the existence or not of an oral lease and disparity of bargaining power are questions of fact which should be determined by a jury. It was obvious that the court did in fact consider the question of the lease of the

garage although it denied the plaintiff the right to file an amended reply stating that it was too late for the plaintiff to amend his pleadings. However, the issue was presented to the court and his ruling encompassed consideration of the possibility of the oral lease for the additional garage space.

Reversed and remanded.

MORAN, P. J. and ABRAHAMSON, J., concur.