BURLEIGH C. DAVIS, Plaintiff-Appellee, *v.* MARATHON OIL COMPANY, Defendant-Appellant.

(No. 12485;

Fourth District—May 22, 1975.

Sims, Grabb and Bennett, of Mattoon (Nolan K. Sims, of counsel), for appellant.

Lemna & Lee, of Tuscola (James F. Lemna, of counsel), for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiff, an independent Marathon dealer suffered severe burns in an explosion which occurred while he was delivering gasoline to a service station at Villa Grove, Illinois, on March 5, 1970. He brought an action for these injuries against defendant Marathon Oil Company and others. A verdict was directed in favor of the other defendants at the close of plaintiff's case. At the close of all of the evidence three counts were submitted to the jury and they returned a general verdict in favor of the plaintiff for $200,000. A post-trial motion was denied and defendant appeals.

The three counts all alleged negligence. The parties disagree as to what exact acts of negligence are charged. Each count stated that defendant owned, controlled, and possessed certain gasoline storage tanks and other equipment, including the fill pipes to the tanks on the service station premises and that the fill pipes were so located as to be dangerous. An issues instruction, given at plaintiff's request, stated that plaintiff claimed defendant "was negligent in the manner in which it stored gasoline at and upon the premises" in question. Defendant's only objection to this instruction was that it omitted a claimed affirmative defense, which the court had earlier stricken.

The evidence was undisputed that the service station premises and station building were owned by Victor J. Crawford, since deceased, and that defendant owned the gasoline storage tanks and piping, including the fill pipes to the tanks. Defendant installed two storage tanks of approximately 1000 gallon capacity with fill pipes in 1951 and one 550 gallon tank with similar piping in 1961. The fill pipes were 2 inches in diameter and extended 4 to 5 inches above the ground.

The tank truck with which plaintiff made the delivery in question was so equipped that gasoline was pumped from the tank through faucets and a metering device into a hose. Plaintiff had placed a manually operated nozzle on the end of the hose which could be held in an open position by hand and could be locked in one of three open positions. With the nozzle locked at the most open position, the apparatus would pump 45 gallons per minute. The truck tank had a capacity of slightly over 1000 gallons. An automatic shut-off nozzle had been furnished to plaintiff, but he was not using it.

Plaintiff testified that he had been servicing the station in question since 1955 and that for 2 years prior to the incident he had been furnishing it with three or four deliveries of gasoline weekly. On the day in question he received a call from Donald E. Taylor, whom he knew to be an attendant at the station. He described Taylor as being a good worker but "in need of considerable supervision." Plaintiff testified that Taylor

told him that both tanks used for regular gasoline were empty. Taylor, on the other hand, testified that he had measured the tanks, told plaintiff that the 550-gallon tank was empty but that the 1000-gallon regular tank was not empty, gave plaintiff the measurement of the amount of gasoline in the 1000-gallon tank, and ordered a delivery. Taylor did not testify as to the amount of gasoline that he had said was in the tank.

Plaintiff further testified that he went to the station and began filling the 550-gallon regular tank by using the nozzle locking device. He put 550 gallons into that tank and stood by the fill pipe during the entire time the tank was being filled. He stated that he could tell when the tank was nearly filled by the sound emanating from the fill pipe. He then dragged his hose to the fill pipe for the 1000-gallon tank. At that time he had 525 gallons of regular left in his truck tank. He began to fill the 1000-gallon tank, but did not use his measuring device to determine the amount of gas already in the tank, nor did he listen to determine from the sound of the gasoline entering the tank as to how full it was. After changing the connection to a new compartment in the truck tank he opened the nozzle, locking it in a position that would allow the fastest possible rate of flow. Because of the cold, chilly weather he then went into the gas station building and began a conversation with Everett Crawford, who was inside. At that time he could not hear the sounds made by the filling of the tank.

After several minutes, Crawford pointed to the gasoline pump which was connected to the tank being filled and asked, "What's that out there?" Plaintiff then saw gasoline by the pump, whirled, opened the door, went out, and tried to grab the nozzle to shut it off. He stated that as he opened the door, gasoline began to flow out of the fill pipe at a height of 12 of 15 inches, forming a pool of gasoline at its base. As soon as he touched the locking device on the nozzle, the explosion and fire occurred. He threw the nozzle and hose away from the fill pipe, jumped out of the burning pool of gas, extinguished the fire on his body and moved his truck away from the building. He said that he had seen no liquid gasoline enter the service station building itself and had smelled no gas fumes in it. He stated that although the fire itself consumed the building the explosion caused no apparent damage to it.

Everett Crawford testified that he was in the station building at the time in question and there was a small floor type space heater stove in the sales area west or northwest of the doorway. He described the space heater as being in operation on the date in question, but on cross-examination he qualified this to say that he knew that it was operable at the time but did not know whether it was burning. He said that the weather was wet and cold. The testimony as to the position of the fill pipe receiving

gasoline at the time of the explosion ranged from it being 4 feet north of the doorway to being 2 feet north and 1 foot east of the doorway.

Each of the sides called expert witnesses, and in answer to a hypothetical question, Charles L. Robley, on behalf of the plaintiff, basing his opinion on the hypothesis that the space heater was on at the time, gave the opinion that the gasoline overflowing caused fumes or vapors and that when the plaintiff opened the station door the fumes or vapors were pulled inward and ignited by the pilot light on the heater.

Scott Anderson, a physicist called on behalf of the defendant, answered a similar hypothetical question, also based upon the hypothesis that the heater was on, with an opinion that when plaintiff approached the nozzle on the hose, a spark passed between his body and the nozzle igniting the gasoline vapor in the area of the nozzle.

Defendant asserts that the trial court erred in its rulings on *voir dire*, admission of evidence, instructions, affirmative defenses and as to the sufficiency of the evidence to support the verdict. Since the latter point depends partly on the propriety of rulings made during the trial, we will consider it last.

Defendant pleaded two affirmative defenses both of which were claimed to arise out of an agreement between the parties entitled "Independent Contractor's Agreement." The agreement licensed plaintiff to use a bulk plant at Tuscola, Illinois, and operate it, selling gasoline on a commission basis. Plaintiff agreed to "meet the requirements of customers within the area." Defendant contends that under the circumstances of this case, by virtue of the agreement, plaintiff indemnified defendant from suit for injury and assumed the risk of the injury. At the close of the evidence, on plaintiff's motion, the court struck these affirmative defenses and refused defendant's tendered instruction on the theory of assumption of the risk.

■■ Paragraph 10 of the agreement stated, in part, that "Ohio shall not be liable for and Contractor shall save and hold Ohio harmless from all claims for injury to or death of any person or persons and for damages to or loss of property, attributal, directly or indirectly to the operations of Contractor." The term "Contractor" referred to plaintiff and "Ohio" to defendant. In *Tatar v. Maxon Construction Co.*, 54 Ill.2d 64, 66, 68, 294 N.E.2d 272, 273, 274, an indemnity agreement between a general contractor and a subcontractor on a construction project provided that the general contractor be indemnified by the subcontractor "against all expenses, claims, suits or judgments of every kind whatsoever * * * by reason of, arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the subcontractors work." The plaintiff was a subcontractor's employee who alleged that he was injured

by the general contractor's negligence when working in an area where only general contractor's employees were otherwise working. The general contractor filed a third-party complaint seeking indemnity from the subcontractor. The supreme court affirmed this court's affirmance of the trial court's dismissal of that third-party complaint. The opinion quoted from *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.*, 395 Ill. 429, 433, 70 N.E.2d 604, 606, where it was stated:

> "It is quite generally held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract [citations], or such intention is expressed in unequivocal terms."

The *Tatar* opinion further stated:

> "* * * we conclude that when measured against the standards set forth in Westinghouse, it does not, under the circumstances alleged in the pleadings, provide indemnity against claims arising out of Maxon's own negligence * * *." 54 Ill.2d 64, 68.

Similarly in *Zadak v. Cannon*, 59 Ill.2d 118, 319 N.E.2d 469, a third-party complaint seeking indemnity was held to be properly dismissed in a suit brought alleging negligence where the indemnity agreement provided that indemnitor would "indemnify and hold harmless" indemnitee "of and from any and all suits, claims, liens, damages, taxes, or demands whatsoever arising out of any such work covered by, initiated or performed under this work." It was admitted by the pleadings that the injured party was performing work pursuant to the order.

Defendant cites the case of *Schek v. Chicago Transit Authority*, 42 Ill.2d 362, 247 N.E.2d 886, for the proposition that one may contract to indemnify another against loss caused by that person's own negligence but in that case the contract expressly so provided.

■ Although each indemnity agreement must be construed according to its particular terms and circumstances, we can see no material difference between the agreement in question and those in *Tatar* and *Zadak*. The trial court properly struck this affirmative defense.

In *Williams v. Brown Manufacturing Co.*, 45 Ill.2d 418, 261 N.E.2d 305, the defense of assumption of the risk was extended to cases involving the tort of defective product. Prior to that in *Barrett v. Fritz*, 42 Ill.2d 529, 248 N.E.2d 111, it was held to be limited to cases where there was a master-servant or other contractual relationship between the parties. In refusing to extend the doctrine to ordinary negligence actions, the court in that case noted the general disfavor with which most legal writers view the doctrine even as applied to the contractual type of case.

■■ Here the parties did have a contractual relationship and plaintiff

at the time of injury was meeting "the requirements of customers within the area." IPI—Civil No. 13.01 (2d ed. 1971) lists among the elements of assumption of the risk in contract cases:

> "Third, that the plaintiff knew these dangers existed and realized the possibility of injury from them or in the exercise of ordinary care would have known the dangers existed and realized the possibility of injury from them and entered into the agreement [contract] voluntarily."

If as applied to this case we view the term "dangers," in the narrow sense as being the location of the fill pipe in relation to the building, there is no showing that plaintiff knew of this at the time of the contract. To view the term, "dangers," in the larger sense as meaning all risks incident to the delivery of gasoline throughout the contract would give a broader application to the doctrine than has ever been done in this state. This defense was properly stricken and the tendered instruction properly refused.

The foundation evidence for the testimony of Charles L. Robley was that he had been engaged in fire science since 1948 and had taught the subject at a community college since 1968. Throughout his 25 years of experience in the field he had been concerned with the chemistry of hazardous materials including the characteristics of flammable liquids and how they become ignited. He had taught courses to officials of hospitals and nursing homes and others on these subjects.

Defendant contends, however, that he was not qualified as an expert on the subject upon which he testified because he had taken no college-level courses in chemistry, science or engineering. Defendant cites *Gibson v. Healy Brothers & Co.*, 109 Ill.App.2d 342, 248 N.E.2d 777, where the trial court permitted a witness to give an opinion on the propensity of denim cloth to ignite and on whether there was a causal connection between a flare pot flame and the igniting of a boy's denim trousers. The purported foundation for his expertise was that he was an engineer and in the early days of his career he had filled flares of a similar nature for 80 days as a part of his work. These qualifications were held to be insufficient, and the admission of his testimony was held to be reversible error. Robley's expertise was far superior. The trial court has broad discretion in determining whether a witness has been properly qualified as an expert (*Northern Illinois Gas Co. v. Wienrank*, 66 Ill.App.2d 60, 213 N.E. 2d 411; *Taylor v. Carborundum Co.*, 107 Ill.App.2d 12, 246 N.E.2d 898). That discretion was not abused here.

Each of the parties contend that the other was guilty of a violation of a State regulation. Plaintiff contends that defendant violated a Depart-

ment of Public Safety Regulation relating to the storage of gasoline, which stated:

> "Fill pipes shall be carried to a location outside of any building, as remote as possible from any doorway or other opening into any building and in no case closer than five feet from any such opening."

Defendant claims that plaintiff was in violation of two regulations of the Department of Law Enforcement, Division of Fire Prevention, one relating to service stations and the other to tank trucks and wagons and each providing that during unloading operations "a competent person shall be present and in charge at all times."

Over defendant's objection, a copy of the first of these regulations certified as being in effect on March 5, 1970, was admitted into evidence. Defendant argues that since the fill pipe in question was installed in 1951, consideration of a regulation not proved to have been in force before March 5, 1970, would give it a grossly retroactive effect. He cites *Pressed Steel Car Co. v. Lyons*, 7 Ill.2d 95, 129 N.E.2d 765, and *United States Steel Credit Union v. Knight*, 32 Ill.2d 138, 204 N.E.2d 4, in support of this contention. These were cases where penalties were sought on the basis of retroactive application of regulations in the face of vested rights in the parties against whom enforcement was sought.

■■ The alleged negligence of defendant as stated by the issues instruction involved the storage of gasoline at the time of the occurrence. The regulation in question was certified as a regulation "relating to storage * * * of gasoline * * *." It prohibits a present storage when fill pipes are improperly located. In any event, no vested right to store gasoline would be superior to the police power of the State to make reasonable regulations to protect the public safety. (*Meegan v. Village of Tinley Park*, 52 Ill.2d 354, 288 N.E.2d 423.) The regulation furnished a standard to be considered pertaining to proper storage (*Darling v. Charleston Community Memorial Hospital*, 33 Ill.2d 326, 211 N.E.2d 253). This document was properly admitted into evidence.

The defendant did not introduce the regulations upon which it relied into evidence nor did it ask that the court take judicial notice of them during the presentation of the evidence. At the conference on instructions defendant tendered two instructions in the form of IPI—Civil No. 60.01 (2d ed. 1971), which set forth the regulations and concluded with the usual ending of that instruction except that the word "rule" was substituted for the word "statute." This part of these instructions stated: "[I]f you decide that a party violated the rule on the occasion in question, then you may consider that fact together with all the other facts

and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence." Plaintiff objected on the basis that the court could not take judicial notice of a regulation and also on the basis that the regulation did not "have the force of law." The court refused the instruction.

A court may properly take judicial notice of administrative regulations. (18 I.L.P. *Evidence* § 8, at 146 (1956). See also *People ex rel. Newdelman v. Weaver*, 50 Ill.2d 237, 278 N.E.2d 81, and *Department of Public Welfare v. Bohleber*, 21 Ill.2d 587, 173 N.E.2d 457.) The regulations do have the "force of law" in that a violation was a misdemeanor at the time of the explosion. Ill. Rev. Stat., ch. 127½, par. 155.

■■ IPI—Civil (2d ed. 1971) does not indicate that Instruction 60.01 is to be given except in cases of evidence of statutory or ordinance violation. The forward to IPI sets forth as one of the criteria for the committee's policies, "second, the committee has not recommended instructions which single out a particular item of evidence for comment, even where there is judicial authority for the instruction." IPI—Civil 60.01 is an exception to that rule, and it would appear that the committee in recommending the instruction and the supreme court in adopting it did not intend to go beyond the terms of that instruction to also include any type of regulations. There was, therefore, no error in refusing these instructions.

Defendant further objects to the refusal of the court to admit into evidence defendant's exhibits 4 and 5. These documents consisted of the customary gas station lease by the owners, the Crawfords, to the Marathon Oil Company and the lease by Marathon back to the Crawfords. Defendant's exhibit 5, the lease from defendant to the Crawfords, had an indemnity agreement in it. The ruling of the court was that the exhibits were immaterial and that the indemnity agreement was prejudicial.

■■ The testimony clearly established that Marathon owned only the underground storage tanks, fill pipes, and pumps and that the Crawfords had purchased the space heater and that they owned and operated the station. Under all of these circumstances there was no reversible error in denying admission to these exhibits.

■■ Another ground of error alleged by the defendant is that he was unduly limited in his examination of two potential jurors in that the court on its own motion and without objection by the plaintiff precluded him from questioning them as to whether or not there was anything they had not been asked about which would prevent them from being fair and impartial. Defendant had had extensive examination of each of these jurors and one of them had been asked substantially the same question

by the judge. The limitations of questioning placed by the judge did not violate the requirements of *People v. Lobb*, 17 Ill.2d 287, 161 N.E.2d 325, and *Street v. Finney*, 9 Ill.App.3d 638, 292 N.E.2d 553. In any event, since defendant did not exhaust its peremptory challenges it cannot now complain about restrictions placed upon it in the selection of the jurors. *People v. Ford*, 19 Ill.2d 466, 168 N.E.2d 33.

Finally we come to the principal question as to whether the evidence is sufficient to support findings that plaintiff was in the exercise of due care and that negligence on the part of the defendant was a proximate cause of the injuries. Under the doctrine of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513:

> "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so over-whelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The evidence on the question of plaintiff's exercise of care was that in filling the second tank he did not use the automatic shut-off nozzle furnished; did not use the measuring stick on his truck; did not listen to the sounds emanating from the tank as it was being filled; but opened the nozzle to the fastest flow notch, left the immediate area, and went into the station building. While in the building his attention was diverted from watching the area of the fill pipe in order to talk to Everett Crawford.

On the other hand, plaintiff testified that he had been told by the attendant Taylor that both tanks were empty and he relied on that information even though he knew Taylor to be a person "in need of considerable supervision." Even at the fast rate of flow he would have had considerable time to get back to the fill pipe had the tank in fact been empty.

The jury could believe from the testimony of a witness named Pangborn that it was not the custom in the area to use the automatic type nozzle. Plaintiff contends that Pangborn's testimony was also that it was the custom in the area to rely on the information given by a gasoline station attendant as to the amount of gasoline left in the tanks. The record indicates, however, that Pangborn's testimony was that this was what he personally did.

Defendant cites the case of *Day v. Barber-Coleman Co.*, 10 Ill.App.2d 494, 135 N.E.2d 231, where it was held that the evidence was not suffi-cient to submit the question of possible due care of the plaintiff to the jury. In that case, the plaintiff was injured while installing an overhead door which fell on him. A consistent practice of using a certain type of

clamp during installation to prevent a sudden falling was shown by the evidence. Plaintiff had failed to use the device, although he was experienced in work of that nature and had such a clamp available. The theory of the decision was that if a person familiar with the hazards of a work and the means to avoid the injury fails to use the means he is guilty of contributory negligence as a matter of law.

Plaintiff relies principally on the case of *Cohn v. Petroleum Heat & Power Co.*, 44 Ill.App.2d 23, 194 N.E.2d 29, where a fuel oil deliveryman taking oil to a tank in a basement had the practice of going to the basement to measure the amount of oil in the tank before starting filling operations. On the day in question, however, he was locked out of the basement and so he hooked his hose to a fill pipe protruding to the outside. He intended to determine when the tank in the basement was full by observing the fill pressure when it developed in the fill pipe. Unknown to the deliveryman a cover on the top of the tank was out of order, permitting the oil to flow from the tank to the floor and thus causing a fire which injured him. The court held that the question of contributory negligence on the part of the deliveryman was a question of fact for the jury.

The situation in these cases differs from that in the case under consideration in that in *Cohn* the deliveryman was unable to get into the basement to measure the amount of fuel in the tank and in *Day* there was no evidence that the plaintiff had been given information which, if accurate, would have made the precautionary measures unnecessary. As the truck had about 1000 gallons of regular gasoline in its tank originally and a 550-gallon tank had already been filled, not enough regular remained on the truck to fill the second tank which had a capacity of over 1000 gallons unless it was nearly half full.

In the instant case there was evidence that plaintiff relied upon the exercise of due care by Taylor. In *Deel v. United States Steel Corp.*, 105 Ill.App.2d 170, 245 N.E.2d 109, a plaintiff was driving a fork lift and admittedly not looking directly ahead when he collided with an overhead wire or cable. There was a regulation in existence prohibiting such overhead wire or cable in such a position. Similarly, in *United States Ice Co. v. Courts Building Corp.*, 316 Ill.App. 145, 44 N.E.2d 330, an ice deliveryman entered a building and fell into an open elevator shaft. He had reason to believe that the watchman who operated the elevator would not leave the doors wide open. In each of these cases the question of whether plaintiff was in the exercise of ordinary care was held to be one for the jury to decide.

The instant case presents a close question as to whether or not the

evidence of plaintiff's due care is sufficient to present a question of fact for the jury, but we deem that the jury could find it reasonable for the plaintiff to have relied upon the statement of Taylor and, therefore, the evidence in this respect is sufficient to meet the test of *Pedrick*. The finding, implicit in the verdict, that plaintiff exercised due care was also not contrary to the manifest weight of the evidence.

Plaintiff's theory is that defendant negligently stored gasoline in a tank whose fill pipe was too close to a door to a building and that this proximity was a proximate cause of the fire and explosion and the resultant injuries. The regulation admitted into evidence providing that the fill pipes should be "as remote as possible from any doorway or opening and in no case closer than 5 feet" was a standard which the jury could consider, and under the evidence they could determine that defendant violated it in storing gasoline in the tank and in doing so was negligent.

Defendant contends that the chain of evidence on causation is lacking in two respects. There is no direct evidence that the space heater inside the sales area of the station was on. The evidence was, however, that it was operable and the explosion occurred on a cold, damp, breezy morning in early March. Under this circumstantial evidence, the jury could infer that the pilot light of the heater was, more likely than not, burning. The expert witness Robley, on cross-examination, stated that the explosion would have occurred even if the fill pipe were 5 feet from the door. The regulation is not stated in absolute terms, however, but states "as remote as possible * * * in no case closer than 5 feet."

Defendant also contends that the acts of plaintiff in spilling the gasoline and of Victor Crawford in installing the space heater in the sales area of the station constituted intervening efficient causes of the fire citing *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665. There, a crane boom contacted an uninsulated wire of the defendant's electric power line electrocuting a workman below. In an action by his personal representative charging negligence, the court ruled that the touching of the uninsulated wire by the boom was an intervening force and thus that act was the proximate cause and the failure to insulate the wire was a remote cause of the death. In *Merlo*, as in *Watson v. Byerly Aviation, Inc.*, 7 Ill.App.3d 662, 288 N.E.2d 233, the intervening occurrence was noted by the court to be not reasonably foreseeable.

A subsequent independent act that is foreseeable does not break the chain of causation (*Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497). Here, if the jury found the storage of gasoline in tanks with fill pipes located as they were with reference to the door of the building to have been negligent, they could have also found that defendant should

have foreseen the danger of fire and explosion resulting therefrom. An obvious purpose of a regulation concerning the distance between fill pipes and openings in buildings is to prevent fire and explosion.

■■ The evidence of defendant's negligence being a proximate cause of plaintiff's injuries also meets the test of *Pedrick*, and the evidence in this regard is not contrary to the manifest weight of the evidence.

The judgment appealed from is affirmed.

Affirmed.

SIMKINS, P. J., and TRAPP, J., concur.