ELMER E. SCHLESSMAN, III, Plaintiff-Appellant, *v.* MAX HENSON, d/b/a Champaign Motor Speedway, Defendant-Appellee.

Fourth District No. 15575

Opinion filed February 11, 1980.

CRAVEN, J., dissenting.

Marvin Gerstein, of Kahr & Gerstein Law Offices, of Champaign, for appellant.

Vance I. Kepley, of Reno, O'Byrne & Kepley, of Champaign, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case concerns the validity of an exculpatory agreement purporting to release the operator of a motor speedway from liability to an amateur race driver for damages for injuries resulting from the operator's negligence and occurring while the driver was in a restricted area consisting of the track and the area close by.

On May 24, 1978, the driver, plaintiff Elmer E. Schlessman filed suit in the circuit court of Champaign County against the operator, Max Henson, d/b/a Champaign Motor Speedway, seeking recovery for injuries he purportedly received on June 4, 1976. During the second lap of a race in which he was participating a banked portion of the track caved in, causing the plaintiff's vehicle to go out of control. Negligence in the design and maintenance of the track was alleged. There was no allegation of wilful and wanton misconduct. Defendant answered, denying many of the material allegations of the complaint and affirmatively alleging: (1) plaintiff had assumed the risk, and (2) the previously entered-into exculpatory agreement released defendant from any liability. On April 20, 1979, the trial court granted a defense motion for summary judgment basing its decision upon the exculpatory agreement.

Plaintiff appeals asserting that the summary judgment cannot be sustained upon a theory that he assumed the risk and that the exculpatory agreement should not be given effect because: (1) the negligent acts complained of were beyond the parties' contemplation; (2) the agreement was an "adhesion" contract; and (3) the agreement was unconscionable in scope and contrary to public policy. We need not consider the question of assumption of the risk because we deem the exculpatory agreement to have been shown to be valid and sufficient in breadth to cover the occurrence complained of. We affirm.

■■ In *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, 291 N.E.2d 30, a trial court judgment for personal injuries obtained by a race driver against a track operator for injuries resulting from negligent operation of the track was reversed. In that case, the appellate court enforced an exculpatory agreement releasing the operator from negligence liability to the driver. The opinion discussed the Illinois cases and statutes which prohibit such agreements between carriers and passengers (*Checkley v. Illinois Central R.R. Co.* (1913), 257 Ill. 491, 100 N.E. 942), employees and employers (*Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721), innkeeper and guests (Ill. Rev. Stat.

1971, ch. 71, par. 1 *et seq.*), and landlord and tenant (Ill. Rev. Stat. 1971, ch. 80, par. 91). The court noted that the then more recent Illinois cases had upheld agreements exculpating a party for its subsequent negligence unless the agreements were prohibited by statute. The court concluded that because (1) the driver raced as a hobby and had other employment, and (2) racing was not of a public or semipublic nature, the agreement was, as a matter of law, consistent with public policy. Here, too, the driver was admittedly an amateur not dependent upon racing for a living.

■■ One respect in which *Morrow* differs from the instant case is that there the breach of safety was that the pit area was not sufficiently protected from out of control cars. The likelihood of such negligence occurring was much greater than the likelihood of the banked portion of the track caving in. This distinction is the basis of plaintiff's argument that the exculpatory agreement did not contemplate releasing defendant for negligence of such an unforeseen nature. No cases cited by plaintiff support such an argument. In *Davis v. Marathon Oil Co.* (1975), 28 Ill. App. 3d 526, 330 N.E.2d 312, *rev'd on other grounds* (1976), 64 Ill. 2d 380, 356 N.E.2d 93, the question arose as to whether the plaintiff had assumed the risk which gave rise to his injuries by contracting to perform the work which he was performing when injured, but both the appellate and supreme courts concluded that there was no basis for an instruction on that issue when the risk arose from violation of a State regulation. In that case, an indemnity agreement which did not state that it was indemnifying the defendant from its own negligence was held not to do so. Here, the exculpatory agreement expressly stated that it intended to cover negligent acts of the defendant. While foreseeability is obviously an important element of the risks which a party impliedly assumes in undertaking an activity, the exact type of negligence which a person expressly agrees to excuse another from need not be foreseen with such clarity. Plaintiff also relies upon *Ruggles v. Selby* (1960), 25 Ill. App. 2d 1, 165 N.E.2d 733, but there the court affirmed the setting aside of a release given to a tortfeasor after injuries had been incurred. The grounds for the relief was a mutual mistake of existing fact as to the extent of the injuries.

By describing the exculpatory agreement as an "adhesion" contract plaintiff means that it was one whereby defendant received all of the benefits. This argument and the contention that the agreement was contrary to public policy involves the same principles. This case differs from *Morrow* in that there, in addition to being permitted to race, the driver also received certain insurance coverage providing him with benefits if injured or killed while racing. However, the *Morrow* court did not consider the benefits to be the reason for its decision.

In addition to the sport of racing, agreements exculpating operators of sport facilities from negligence liability to users of the facilities have

been upheld in this State in connection with stabling of horses (*Rutter v. Arlington Park Jockey Club* (7th Cir. 1975), 510 F.2d 1065; *Erickson v. Wagon Wheel Enterprises, Inc.* (1968), 101 Ill. App. 2d 296, 242 N.E.2d 622) and providing gymnasium and swimming facilities (*Owen v. Vic Tanny's Enterprises* (1964), 48 Ill. App. 2d 344, 199 N.E.2d 280). In none of those opinions is there any indication that the party granting the exculpation received any consideration other than the right to use the facilities, and in each case the party's alternative to not agreeing was refusal to use the facilities. In each case the exculpatory provision was deemed to be valid as a matter of law.

On the other hand, in *Strauch v. Charles Apartments Co.* (1971), 1 Ill. App. 3d 57, 273 N.E.2d 19, a judgment entered on the pleadings upholding an exculpatory clause in favor of a landlord against a tenant was reversed and the cause remanded, the court holding that the validity of the clause depended partly on the relative bargaining power of the parties. The case concerned a time when no legislation prohibited such agreements between landlord and tenant. The opinion referred to *Jackson v. First National Bank* (1953), 415 Ill. 453, 114 N.E.2d 721, where the court had upheld an exculpatory clause stating them to be valid if clearly intended by the parties and the relationship between the parties did not militate against the agreement.

We consider the essence of the instant situation to be, as in *Morrow*, that (1) the plaintiff did not need to race in order to make a living and (2) racing was not a necessity to him nor an activity that needed to be promoted for the public good. It did not involve his transportation, employment or lodging. His only compulsion to race was his own pleasure. Thus even if the defendant's profit from the operation might be shown to be great, we cannot conceive of evidence being presented which would show such a disparity of bargaining power as to vitiate the agreement. The *Jackson* court indicated that the burden of showing such an agreement to be against public policy was a difficult one. We conclude that as a matter of law it could not be shown here.

For the stated reasons, we affirm.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I dissent for two reasons. The source of the harm to the plaintiff clearly falls outside the scope of the exculpatory clause, and, for a further reason, even if the exculpatory clause is shown to have the sweeping scope that the majority gives it, the plaintiff should be entitled to show that the clause is void as an "adhesion" contract.

This case differs from *Morrow* in that here, the injury to the plaintiff was from a condition of the track and unrelated to any risks that are ordinarily attendant on auto racing.

Thus, the source of the harm here falls outside the scope of the exculpatory clause. I would not permit the defendant to rely on the clause to shield himself from liability. The intent of these clauses is obvious: to protect track owners from claims based on the conduct of other drivers. The clause should not also bar claims based on the owner's own negligence in constructing or maintaining the track. Defendants should not be allowed to foist on the unsuspecting the burden of testing recreational facilities for dangerous defects.

The majority characterizes the "essence of the instant situation" as a trivial hobby. Presumably, if racing was the plaintiff's occupation, or (and?) if racing deserved support as necessary to the Republic, the majority would be less likely to give effect to the exculpatory clause. Distinguishing the trivial from the important and hobbies from jobs implies that the validity of an exculpatory clause should depend on the significance of the interests and actions involved; I fail to find any legal or logical basis for this assumption. The majority would have the defendant's liability turn on the plaintiff's occupation; paradoxically, weekend enthusiasts would receive less protection than professionals, who would be able to demand more from the track owners through greater organization and self-interest.

The effect of the majority decision is to permit owners of race tracks to charge drivers for the privilege of testing the surfaces of new tracks. The accident involved here occurred during the second lap of the first race on the defendant's track. No races had ever been run before on this surface.

Even if the sort of harm involved here fell within the scope of the exculpatory clause, I would permit the plaintiff to present evidence showing the adhesive nature of the agreement.

The majority misunderstands the meaning of "adhesion contract." It is not necessarily a contract "whereby defendant received all of the benefits"; more precisely, an adhesive contract concerns a product or service that cannot be obtained except by acquiescing to terms and conditions over which the weaker party has little or no bargaining power. (See Black's Law Dictionary, "Adhesion contract," at 38 (5th ed. 1979).) The weaker party generally receives one benefit—the benefit he could not obtain so easily without agreeing to the unfair terms of the contract. If most or all race tracks required racers to sign agreements absolving the track owner of all liability for personal harm and the owners invariably refused to vary the terms of the exculpatory clauses, the contracts would be adhesive. Before a defendant is permitted to use an exculpatory clause

to escape tort liability, the plaintiff should be allowed to present evidence regarding the adhesive nature of the agreement. Proving that an agreement is adhesive deprives it of legal effect. *Strauch v. Charles Apartments Co.* (1971), 1 Ill. App. 3d 57, 273 N.E.2d 19.