Norman HAINES and Barbara Haines, Appellants,

v.

ST. CHARLES SPEEDWAY, INC., and Bob Wente, Appellees.

No. 88–2246.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1988.
Decided May 11, 1989.

---

1. The Hon. Stephen Limbaugh, United States District Judge for the Eastern and Western Districts of Missouri.

court[1] granted defendants' motions for summary judgment, holding that a release signed by Norman Haines precluded him from pursuing his claims. 689 F.Supp. 964 (E.D.Mo.1988). We affirm.

The facts of this case are essentially undisputed, and in reviewing the district court's decision to grant summary judgment we view the facts in a light most favorable to the nonmoving parties, Norman and Barbara Haines. *See Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 571 (8th Cir.1988). Norman Haines owned a Stanton sprint car and wished to race it at the St. Charles Speedway of St. Charles, Missouri, on April 26, 1986. Although he hired Mike Thurman to drive the car, Haines desired to enter the infield portion of the Speedway in order to aid in preparing for the race. As he stood in line, waiting with others to enter the infield, Haines was presented with and signed a document entitled "Release and Waiver of Liability and Indemnity Agreement." All those who entered the infield were required to sign this form.

Haines, who has a second or third grade reading ability, signed the document without reading it, as he had done many times before. At no point did he ask his wife Barbara, who was an official of the Midwest Racing Association, or anyone else to explain the significance of the release. Some time after gaining access to the infield, Haines asked that his sprint car be started. During this process, which entailed using a separate auto to push-start the racing car, Haines was struck by his own car and injured.

Haines sued the St. Charles Speedway, Inc. and Bob Wente, the promoter of the event at which Haines was injured. Haines alleged that they were negligent in permitting an inexperienced driver to operate the push car, in constructing and maintaining the speedway, and in failing to warn him of the dangers presented by the speedway. Norman Haines claimed for damages aris-

Michael A. Gross, St. Louis, Mo., for appellants.

Carolyn M. Kopsky, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and WATERS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Norman and Barbara Haines appeal an adverse summary judgment. Norman Haines was injured when struck in the infield of a racetrack by his own race car while attempting to have it started before an event. He and Barbara, his wife, sued the owner of the racetrack and the promoter of that day's racing event. The district

---

* The HONORABLE H. FRANKLIN WATERS, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

ing from his injury; his wife Barbara asserted loss of consortium.

The district court granted defendants' motion for summary judgment, holding that the release signed by Haines exculpated the Speedway and Wente from any liability that they may have incurred as a consequence of their alleged negligence. Contending that this was error, Norman and Barbara Haines argue that the release constituted a contract of adhesion under controlling Missouri law and was unenforceable because at the time he signed the release Norman could not have expected that the document would grant the Speedway and promoter Wente unlimited exculpation from liability.

▮ Initially, we observe that the language of the release signed by Haines is both unambiguous and broad in scope:

RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas [and] infield * * *) * * * or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED * * *:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization * * *, track operator, track owner, officials, car owners, drivers [and] pit crews * * * from all liability to the undersigned * * * for any or all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area * * * or for any purpose participating in the event;

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted

area or in any way competing, officiating, observing, or working for, or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect. THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

The parties, however, debate whether this document constitutes a "contract of adhesion." Missouri law controls in this diversity case. Particularly illuminating are two scholarly opinions crafted by Judge Shangler of the Missouri Court of Appeals for the Western District, one of which provides this definition:

A contract of adhesion is a form contract submitted by one party and accepted by the other on the basis of *this or nothing*. It is an instrument devised by skilled legal talent for mass and standard-industrywide use which does not allow for idiosyncrasy. It is a transaction not ne-

gotiated but one which literally *adheres* for want of choice. *Estrin Constr. Co. v. Aetna Casualty and Sur. Co.*, 612 S.W.2d 413, 418 n. 3 (Mo.App. 1981) (emphasis in original); *see also Spychalski v. MFA Life Ins. Co.*, 620 S.W.2d 388 (Mo.App.1981). We are satisified that the document signed by Haines, one obviously crafted by lawyers, printed in small type, and signed by all who desired entry to the infield of the Speedway, constituted a contract of adhesion under this standard. While some such contracts may be enforceable, we are to examine the "total transaction" in determining the intent of the parties, rather than looking only to the literal language of the document. *Id.* at 420.

■ Haines contends that the circumstances surrounding his execution of the release mandate that we hold it invalid. He argues that the Speedway knowingly withheld the release form from all track entrants until the moment of entry, and that it had no reason to expect that the drivers, mechanics, and car owners who frequented the track would appreciate the significance of the release when they signed it.

Here, the district court fully considered the circumstances surrounding the execution of the release. Aware of Haines' claim that he possessed only a second or third grade reading ability, the court stated that, "If Norman Haines is functionally illiterate, it was his duty to procure someone to read or explain the release to him before signing it." In response to Haines' argument that he was "pressured" into signing the release, the district court observed that Haines did not produce any fact establishing that the execution of the release was a product of duress.

Indeed, Norman Haines stated in deposition that he has been involved in racing since 1952, and during that time has owned some 13 sprint cars. In 1954, Haines discontinued participating in racing events as a driver when he started to raise a family. He admits to doing so because of the dangerousness of the sport. He also admits to witnessing, in the past, crashed automobiles roll to the infield portions of the tracks. While we are sensitive to the circumstances now facing Norman Haines, he doubtlessly knew that the sport placed risks on both participants and spectators. Although Haines could have withdrawn from his hobby at any time, he did not do so.

In construing a standardized contract under Missouri law, furthermore, we are "to effectuate the reasonable expectations of the average member of the public who accepts it." *Estrin,* 612 S.W.2d at 419 n. 4; *see also Spychalski,* 620 S.W.2d at 393 n. 6. To hold that a reasonable person would not realize the significance of the release signed by Haines would be to ignore the unambiguous text of the document.

■ Haines also argues that the release is unenforceable as overbroad. In Missouri an agreement to exempt one from the consequences of negligence is not against public policy. *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270, 272 (Mo.1965); *Liberty Fin. Management Corp. v. Beneficial Data Processing Corp.,* 670 S.W.2d 40, 47 (Mo.App.1984). The release signed by Haines did not purport to exempt the defendants from responsibility for harm willfully inflicted or caused by gross negligence. It was not overbroad.[2]

---

2. Although Missouri has not yet had occasion to uphold exculpatory contracts in the context of auto racing, courts in other states have uniformly upheld such releases. *See, e.g., Hammer v. Road America, Inc.,* 614 F.Supp. 467 (E.D.Wis. 1985) (applying Wisconsin law), *aff'd,* 793 F.2d 1296 (7th Cir.1986); *Dunn v. Paducah Int'l Raceway,* 599 F.Supp. 612 (W.D.Ky.1984) (applying Kentucky law); *Rhea v. Horn–Keen Corp.,* 582 F.Supp. 687 (W.D.Va.1984) (applying Virginia law); *Grbac v. Reading Fair Co.,* 521 F.Supp. 1351 (W.D.Pa.1981) (applying Pennsylvania law), *aff'd,* 688 F.2d 215 (3d Cir.1982); *Gore v.*

*Tri–County Raceway, Inc.,* 407 F.Supp. 489 (M.D.Ala.1974) (applying Alabama law); *Schlessman v. Henson,* 80 Ill.App.3d 1139, 36 Ill.Dec. 459, 400 N.E.2d 1039 (Ill.App.1980), *aff'd,* 83 Ill.2d 82, 46 Ill.Dec. 139, 413 N.E.2d 1252 (1980); *LaFrenz v. Lake County Fair Bd.,* 172 Ind.App. 389, 360 N.E.2d 605 (1977); *Lee v. Allied Sports Associates, Inc.,* 349 Mass. 544, 209 N.E.2d 329 (1965); *Winterstein v. Wilcom,* 16 Md.App. 130, 293 A.2d 821 (1972). These opinions typically reason that participants engaging in auto racing appreciate the risks associated with the sport and are free to refuse to partic-

Accordingly, the judgment of the district court is affirmed.

---

ipate under the conditions imposed. Were courts to hold such releases invalid, furthermore, many auto racing events would become economically unviable. *See Dunn*, 599 F.Supp. at 613.

