(No. 47707.—

BURLEIGH C. DAVIS, Appellee, v. MARATHON OIL
COMPANY *et al.*—(Marathon Oil Co., Appellant.)

*Opinion filed October 1, 1976.*

CREBS, J., took no part.

Sims, Grabb & Bennett, of Mattoon (Nolan K. Sims, of counsel), for appellant.

Lemna & Lee, of Tuscola, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

After a jury trial in Douglas County circuit court, a $200,000 judgment was entered for plaintiff, Burleigh Davis, in an action for personal injuries against defendant, Marathon Oil Company. Verdicts were directed in favor of two other defendants, Donald Taylor and Helen Crawford, executor of the last will and testament of Victor J. Crawford, at the close of plaintiff's case. Only Marathon appealed, the Appellate Court for the Fourth District affirmed (28 Ill. App. 3d 526), and we allowed defendant's petition for leave to appeal.

Plaintiff's injuries were the result of a gasoline explosion and fire on March 5, 1970, at a service station in Villa Grove, Illinois. Plaintiff claimed defendant was negligent in the manner in which it stored gasoline on the station premises. The station building consisted of two rooms: a sales area to the north and a lubrication area to the south. A standard-sized door opened on the east side of the building from the sales area to the driveway, where

three gasoline pumps were located. Three underground storage tanks supplied gasoline to the pumps, each tank serving a single pump independently. Two tanks were used to store regular gasoline; the third, ethyl. The northernmost regular tank had a capacity of 550 gallons, and the other regular tank a capacity of 1,000 gallons. Fill pipes for the tanks were about two inches in diameter and extended 4 to 5 inches above the ground. All pumps, tanks, and piping were owned and installed by defendant. The service station building and the remainder of the premises, with minor exceptions not pertinent to this appeal, had been owned by the station operator, Victor Crawford, who died following the accident and the executor of whose estate was made a party defendant.

Under an independent contractor's agreement between plaintiff and defendant executed in 1958, plaintiff was to sell and deliver Marathon petroleum products from a bulk plant in Tuscola to customers in the Douglas County area, including the Crawford station. Plaintiff made deliveries of gasoline using a truck equipped with a compartmentalized tank that permitted gasoline to be pumped from the tank through faucets and a metering device into a hose. Plaintiff testified that since 1968 he used a manually operated nozzle on the end of the hose, which could be held in an open position by hand or could be locked in one of three open positions. With the nozzle locked in the most open position, the apparatus would pump 45 gallons per minute. Plaintiff also owned, and prior to 1968 had used, two nozzles equipped with a device that would automatically stop the flow of gasoline when the storage tank became full. He had removed the automatic nozzles from his hoses because they were not suitable for the fueling of heavy road construction equipment, for which he had a contract. Plaintiff last serviced that road equipment in December, 1969.

Plaintiff testified that he first serviced the Crawford station in 1955 and that for two years before the date of

the explosion he had furnished it with three or four deliveries of gasoline weekly. On the morning of March 5, 1970, plaintiff received a telephone call at the bulk plant from Donald Taylor, whom he knew to be an attendant with nearly four years of service at the Crawford station. He described Taylor as a good worker but in need of "considerable supervision." Plaintiff testified that Taylor told him both tanks used to store regular gasoline were empty, and requested a delivery. Taylor, on the other hand, testified that he had measured the tanks with a calibrated stick, told plaintiff the 550 gallon tank was empty, but also told him the amount of gasoline still contained in the 1,000 gallon tank, which was not empty. Taylor could not remember the amount of gasoline he had said was in the larger tank.

Plaintiff further testified that he arrived at the Crawford station about half an hour after the telephone call with approximately 1,080 gallons of regular gasoline, distributed among four compartments in his tank truck. He did not talk with Taylor upon arriving but presumed he was there. Plaintiff testified that he began filling the 550 gallon regular tank using the manually operated nozzle. He locked it into an open position and squatted by the fill pipe. He stated that as an experienced operator, he could tell when a tank was nearly full by the sound emanating from the fill pipe. On this day, when the smaller tank was nearly full, plaintiff released the nozzle locking device and completed the operation by hand, putting 550 gallons into the empty tank, thus leaving about 525 gallons of regular gasoline in the truck.

Plaintiff then dragged his hose to the fill pipe for the 1,000 gallon tank. Testimony as to the position of that fill pipe ranged from it being 4 feet north of the doorway to the sales area, to 2 feet north and 1 foot east of the doorway. Although he carried a calibrated measuring stick on his truck, he did not measure the amount of gasoline in the larger tank. Instead, he pumped one tank truck

compartment dry, changed the hose connection to another compartment, and locked the nozzle in a position that would allow the most rapid flow of gasoline. Plaintiff did not squat by the fill pipe to listen to the sound from this tank but, because of the chilly, damp weather, went into the sales area of the station, closed the door, and began a conversation with Everett Crawford, who was inside. Plaintiff testified he could not at that time hear sounds emanating from the fill pipe.

After several minutes, Crawford pointed to the gasoline pump that was connected to the tank being filled and asked, "What's that out there?" Plaintiff then saw gasoline by the pump, whirled, opened the door inward, went out and tried to grab the nozzle to shut it off. He stated that as he opened the door, gasoline began to flow from the fill pipe at a height of 12 to 15 inches, forming a pool of gasoline at its base. As soon as he touched the nozzle, the explosion and fire occurred. Plaintiff threw the nozzle and hose away from the fill pipe, extinguished the flames from his body, and moved his truck away from the building. He testified he had seen no liquid gasoline enter the building and had smelled no gasoline fumes while inside.

Everett Crawford, a brother of Victor, who assisted in the operation of the station, testified that the station contained a small floor-mounted space heater with a pilot light, which Victor had installed in the sales area 6 to 8 feet west or northwest of the doorway. He described the space heater as being in operation at the time of the explosion, but on cross-examination qualified his testimony to say that he knew it was operable but did not know whether it was burning. He did confirm, however, that the weather was windy and cold; other testimony indicated the wind was from the north or northeast.

Each side called an expert witness to attempt to explain the cause of the explosion. Charles Robley, on behalf of the plaintiff, based on the hypothesis that the space heater was operating, gave an opinion that the

gasoline overflowing caused fumes or vapors that were pulled into the station when plaintiff opened the door and were ignited by the pilot light on the heater. Scott Anderson, on behalf of the defendant, also basing his testimony on the hypothesis that the space heater was operating, gave an opinion that when plaintiff approached the nozzle to shut it off, a spark passed between his body and the nozzle igniting the gasoline vapor in the area of the nozzle.

Defendant urges as reversible error the trial court's refusal to give two tendered instructions, each in the form of Illinois Pattern Jury Instruction No. 60.01 (IPI Civil No. 60.01 (2d ed. 1971)). One of the refused instructions read:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain regulation of the Division of Fire Prevention, Department of Law Enforcement of the State of Illinois, pertaining to tank trucks and tank wagons, which provided that:
>
> > During loading and unloading of tank trucks and tank wagons, a competent person shall be present and in charge at all times.
>
> > If you decide that a party violated the Rule on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

The other instruction was in substantially the same form but the regulation pertained specifically to service stations and required, "During unloading operations a competent person shall be present and in charge at all times." Both regulations were adopted pursuant to legislative authority granted in section 2 of "An Act to regulate the storage, transportation, sale and use of gasoline and volatile oils." (Ill. Rev. Stat. 1969, ch. 127½, par. 154.) At the time of the occurrence, violation of reasonable rules and regulations so adopted was a misdemeanor. Ill. Rev. Stat. 1969, ch. 127½, par. 155 (now a petty offense).

As written, IPI Civil No. 60.01 pertains only to a

party's violation of a statute or ordinance. Illinois law is clear that "the violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence." (*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 417.) Violation does not constitute negligence *per se,* however, for the evidence of negligence may be rebutted by proof that the party acted reasonably under the circumstances, despite the violation. (*Johnson v. Pendergast* (1923), 308 Ill. 255, 262-65.) And proven negligence results in liability only when the injury was proximately caused by the violation. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79.) The party requesting instruction No. 60.01 must also demonstrate that the statute or ordinance was intended to protect against the injury incurred, and that the injured party is within the class intended to be protected. *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 76-78; *Brunnworth v. Kerens-Donnewald Coal Co.* (1913), 260 Ill. 202, 216-17.

The Committee on Jury Instructions did not recommend against a similar instruction when the evidence disclosed a violation of an administrative regulation; there is simply nothing to indicate it considered the question. We find no convincing reason why violation of administrative rules, regulations, and orders designed to protect human life or property should not also be considered *prima facie* evidence of negligence, provided they are validly adopted and have the force of law. (Restatement (Second) of Torts sec. 286 (1965); 57 Am. Jur. 2d *Negligence* secs. 271-73 (1971).) Administrative regulations are the result of an agency's applied expertise and are relevant evidence of applicable standards of care. Illinois indulges the fiction that all its residents are presumed to know the law. This fiction is perhaps more often nearer fact in the case of administrative regulations directed at a specific occupation and adopted by the agency responsible for its regulation.

This conclusion is supported by *Darling v. Charleston*

*Community Memorial Hospital* (1965), 33 Ill. 2d 326, where this court permitted the admission into evidence of hospital regulations adopted by the State Department of Public Health, stating at page 332: "This evidence aided the jury in deciding what was feasible and what the defendant knew or should have known. It did not conclusively determine the standard of care and the jury was not instructed that it did." Either of the tendered instructions here could well have aided the jury in deciding what plaintiff should have known and done. Likewise, the instructions did not conclusively determine the standard of care, for they provided that if the jury found a violation they could "consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent."

Plaintiff suggests that defendant was precluded from instructing on these regulations because it neither introduced them into evidence nor asked that judicial notice be taken of them during the presentation of evidence. We agree that preferable practice would involve introduction of the regulation in evidence, but we do not regard that failure here as precluding the instruction. Plaintiff here had prior knowledge of and adequate opportunity to determine the accuracy and validity of the regulations, and cannot claim surprise at defendant's attempt to use them, because defendant seasonably presented to plaintiff a copy of the regulations under Rule 216(d) (50 Ill. 2d R. 216(d)), and received no objection to them. See also *Hitt v. Langel* (5th Dist. 1968), 93 Ill. App. 2d 386, 392-94; *Berg v. Collier* (5th Dist. 1965), 60 Ill. App. 2d 145, 149-51.

We consider now whether the failure to give one or both of the tendered instructions was sufficiently harmful to require a new trial. In our judgment defendant was not, because of their similarity, entitled to have both instructions given. We believe, however, that denial of both was prejudicial to the point that a new trial is required. We so

conclude, partly because of the weight the jury may have attached to a similar administrative regulation relied on by plaintiff to show defendant's negligence in storing gasoline at Crawford's station. To the jury the most impressive evidence of defendant's negligence in this record may have been the following regulation: "Fill pipes shall be carried to a location outside of any building, as remote as possible from any doorway or other opening into any building and in no case closer than five feet from any such opening," introduced by plaintiff under the authority of *Darling* as evidence of a standard of care. Testimony showed that the fill pipe for the 1,000 gallon tank was from 2 to 4 feet from the door to the sales area of the service station. Denial of defendant's tendered instructions may have been particularly prejudicial since the regulation they referred to had been adopted by the same department.

Defendant argues that the regulation relating to the location of fill pipes cannot be applied to it because the regulation was adopted some years after the fill pipes were installed. It states:

> "It is the position of Marathon on this appeal that Regulation No. 7, applicable to the placement of fill pipes, was not admissible without a showing that the Regulation was in effect in 1951 (when the pipe was installed) because the Act under which it was propounded specifically created misdemeanor penalties for violations of such regulations, thus giving the Regulation the force of law."

A sufficient answer to this argument is that no effort is here made to enforce the criminal penalties. The sole purpose of its introduction was its relevance on the question of defendant's negligence. It manifests a concern with the hazards to public safety emanating from improper storage of gasoline, and appears intended to eliminate existing hazards as well as to prevent the creation of future ones. The act under the authority of which this regulation was adopted pertains to the "storage, transportation, sale and use" of gasoline. (Ill. Rev. Stat. 1969, ch. 127½, pars.

153-55.) The regulation was properly admitted into evidence.

The record contains considerable evidence the jury could have relied on to find plaintiff contributorily negligent. Plaintiff by his own testimony conceded he did not measure the quantity of gasoline in the 1,000 gallon tank with an available calibrated stick, did not use a nozzle with an automatic shut-off device, of which he owned two, did not squat by the fill pipe to listen to the emanating sounds, and went into the station leaving the manual nozzle locked in its most open position. Indeed, defendant argues that we should find plaintiff contributorily negligent as a matter of law under the test enunciated in *Pedrick v. Peoria and Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510:

> "*** verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

Viewing the evidence in its aspect most favorable to plaintiff, however, the jury could have believed plaintiff's testimony that Donald Taylor told him both tanks were empty and, in our judgment, could have found plaintiff's reliance and actions in reliance on this information to be reasonable, particularly in view of the fact that the tank first filled had in fact been empty, even though plaintiff thought Taylor needed "considerable supervision" in his employment. We cannot conclude that a jury's verdict based on plaintiff's reliance on Taylor's statement could never stand. See *Deel v. United States Steel Corp.* (1st Dist. 1969), 105 Ill. App. 2d 170, 182 (jury question whether fork lift driver who was not looking ahead and collided with overhead cable was contributorily negligent where plant regulation prohibited overhead cables); *United States Ice Co. v. Court Building Corp.* (1st Dist. 1942),

316 Ill. App. 145 (jury question whether delivery man who fell into open elevator shaft was contributorily negligent, where he had reason to believe watchman would not leave doors open).

While we do not believe plaintiff was contributorily negligent as a matter of law, that question is a close one. For this reason, the denial of both of defendant's instructions was clearly prejudicial. We cannot fairly assume that the jury's consideration of these safety regulations, requiring a competent person to be "present and in charge at all times" during unloading operations, would not have affected the outcome of the trial. This assumption is even more unjustified in the face of the probability that the jury relied on a similar safety regulation in deciding the issue of defendant's negligence. We also cannot conclude, on the other hand, that a jury verdict for plaintiff, had either of the refused instructions been given, could never stand under *Pedrick*. A jury might properly determine that plaintiff's actions in reliance on Taylor's statements were reasonable, despite the violation of the regulations, for violation is only *prima facie* evidence of negligence. Accordingly, the cause must be remanded for a new trial.

Defendant has raised several additional issues which seem likely to recur in the same form on retrial. It argues that, as a matter of law, its negligence in storing gasoline was not a proximate cause of plaintiff's injury. Defendant alleges the existence of three intervening and independent causes of those injuries: the accumulation of a pool of gasoline around the fill pipe; the induction of gasoline vapors into the sales area; and the ignition of the vapors by the pilot light on a space heater owned and installed by a third party. Rules of proximate cause pertinent to this appeal were set out in *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380-81:

> "What constitutes proximate cause has been defined in numerous decisions, and there is

practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character an an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. [Citations.] An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. [Citations.] What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence. [Citation.] "

Defendant has cited cases in which a defendant's negligent conduct was determined as a matter of law not to have proximately caused the resulting injuries. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300; *Watson v. Byerly Aviation, Inc.* (3d Dist. 1972), 7 Ill. App. 3d 662; *Waters v. Futuristic Homes, Inc.* (1st Dist. 1971), 131 Ill. App. 2d 143.) We emphasize, however, that each case must turn on its own facts. Defendant remains liable for its negligence if the intervening event was foreseeable. Moreover, to escape liability, defendant must demonstrate that the intervening event was unforeseeable as a matter of law. This we cannot conclude. Proximate cause is ordinarily a question for the jury to decide. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84.) In our judgment, it is not unforeseeable that gasoline could accumulate around a fill pipe. The administrative body that adopted the regulation concerning the

location of fill pipes must also have thought it foreseeable. Similarly, it is not unforeseeable, given an accumulation of gasoline near the doorway to a building with a breeze blowing towards it, that vapors might enter the building, ignite, and cause an explosion. Nor can we conclude that the jury's findings that defendant's negligence proximately caused plaintiff's injuries is contrary to the manifest weight of the evidence.

Defendant next contends the trial court erred in striking its two affirmative defenses on plaintiff's motion at the close of all the evidence. The first affirmative defense alleged that plaintiff had contractually assumed the risk of injury by entering into the 1958 independent contractor's agreement with defendant, although the contract contains no clause to that effect. Defendant sought to renew its defense by tendering an instruction in the form of IPI Civil No. 13.01 (IPI Civil No. 13.01 (2d ed. 1971)), which was refused. To hold for defendant the jury would have been required to find, under the second element of the instruction, "that the dangers involved were the dangers which ordinarily accompany the activities contemplated in the agreement." In our judgment, that finding could not be made on this record. There is no evidence in the record that the danger inherent in filling a gasoline tank whose fill pipe was located in violation of State regulations would ordinarily accompany the contractual activity of delivering gasoline. We find no error in the court's action. IPI Civil No. 13.00 (2d ed. 1971).

The second stricken affirmative defense alleged that under the independent contractor's agreement plaintiff indemnified defendant from suit for injury. Clause 10 of the agreement reads, in part:

> "[Defendant] shall not be liable for and [plaintiff] shall save and hold [defendant] harmless from all claims for injury to or death of any person or persons and for damages to or loss of property, attributable directly or indirectly to the operations of [plaintiff]."

In *Westinghouse Electric Elevator Co. v. LaSalle Monroe*

*Building Corp.* (1946), 395 Ill. 429, 433-34, however, this court adopted the following rule:

"*** an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, [citations] or such intention is expressed in unequivocal terms. [Citations.] "

In *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, this court declined to interpret as indemnifying defendant against its own negligence a clause covering all claims "by reason of, arising out of, or connected with, accidents, injuries, or damages, which may occur upon or about the Subcontractor's work." (54 Ill. 2d 64, 66; see also *Zadak v. Cannon* (1974), 59 Ill. 2d 118.) We find neither explicit language nor an unequivocal expression of intent in the clause at issue here.

Defendant's two remaining issues, that the trial court erred in excluding agreements between defendant and Crawford pertaining to the lease and lease-back of the service station, and that plaintiff's expert witness was unqualified to give an opinion as to the cause of the explosion, were adequately discussed and correctly decided by the appellate court. We see no need to discuss them further here.

The judgment is accordingly reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.