CATHERINE DOUBET, Plaintiff-Appellee, *v.* THOMAS K. MORGAN, Defendant-Appellant.

Third District   No. 3—83—0095

Opinion filed March 6, 1984.

STOUDER, P.J., dissenting.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

On November 24, 1981, the Knox County State's Attorney filed a paternity action on behalf of the plaintiff, Catherine Doubet, alleging that the defendant, Thomas Morgan, was the father of her child, Emily Catherine Doubet, born January 31, 1981. At the conclusion of the evidence, the jury returned a verdict in favor of the defendant. The plaintiff filed a post-trial motion and, on January 6, 1983, the court entered an order granting the plaintiff a new trial. Thereafter, the defendant filed a petition for leave to appeal pursuant to Supreme Court Rule 306 (Sup. Ct. R. 306, as amend. Aug. 9, 1983, eff. Oct. 1, 1983).

At trial, the plaintiff testified on direct examination that she first met the defendant on April 20, 1980, at the home of a friend. On April 26, 1980, she spent the night with the defendant and had intercourse with him twice on that occasion. According to the plaintiff, she saw the defendant regularly and had intercourse with him regularly from that time until June 20, 1980.

The plaintiff further indicated that, after May 3, 1980, she spent most nights at the defendant's residence and that on May 16, 1980, she moved into the defendant's residence in Canton, bringing her clothes and personal belongings with her. She continued to pay rent on her house in Maquon, however. She lived with the defendant until June 22, 1980, having intercourse with him on a regular basis.

The plaintiff testified that her menstrual period began on April 30, 1980, and lasted until May 2, 1980. She indicated that she had no further menstrual periods until after the birth of her child on January 31, 1981. She learned that she was pregnant on June 19, 1980, and informed the defendant of her condition on June 20, 1980. Although the defendant, according to the plaintiff, was initially pleased about the impending birth, on June 22 he left a note for her at his residence asking that she vacate the premises so that he could "think things out." The plaintiff moved out, as the defendant had requested. The plaintiff also testified to having had intercourse with the defendant in July and August, 1980. Their relationship ended after that, and the

defendant married another woman in November 1980.

On redirect examination, the plaintiff testified that she had not had sexual intercourse with anyone other than the defendant in April, May or June of 1980.

The defendant, testifying as an adverse witness, initially indicated that he had had sexual intercourse with the plaintiff on June 20 and June 29, 1980, at his residence in Canton. Upon further questioning, the defendant admitted having had intercourse with the plaintiff, on a third occasion, at her residence in Maquon.

On direct examination, the defendant testified that he had had back surgery on March 15, 1980, and that he was in a body cast until May 14, 15 or 16, 1980. He denied having intercourse with the plaintiff until after his body cast was removed. The defendant also testified that the plaintiff did not inform him that she was pregnant until October 1980. He further stated that he had never admitted being the father of her child.

On rebuttal, the plaintiff described the body cast worn by the defendant and explained how intercourse was accomplished while the defendant was wearing it.

The evidence is, of course, conflicting. What we are asked to decide is whether the trial court erred in granting the plaintiff a new trial after the jury returned a verdict in favor of the defendant.

We note initially that the granting of a motion for a new trial is within the sound discretion of the trial judge and will not be reversed by a reviewing court except in a case of clear abuse of such discretion. (*Di Maso v. Wieboldt Stores, Inc.* (1976), 37 Ill. App. 3d 966, 969-70, 347 N.E.2d 466, 470; *Klatt v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 481, 211 N.E.2d 720.) The presumption on review is that the trial court is in the best position to determine accurately whether the verdict of the jury was proper and has therefore correctly determined the proper disposition of the motion for a new trial. *King v. City of Chicago* (1964), 53 Ill. App. 2d 484, 202 N.E.2d 839; *Warren v. Patton* (1954), 2 Ill. App. 2d 173, 119 N.E.2d 465.

On a motion for a new trial, the trial court is to weigh the evidence and set aside the verdict and order a new trial if it finds that the verdict is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36; *Heideman v. Kelsey* (1953), 414 Ill. 453, 466, 111 N.E.2d 538, 544.) In the instant case, a review of the record reveals that the evidence overwhelmingly favored the plaintiff. Where the evidence is susceptible to no reasonable inferences sustaining a jury's verdict, the trial court may set the verdict aside and grant a new trial. The trial court

did not abuse its discretion in granting plaintiff's motion for a new trial.

Accordingly, we affirm the order of the circuit court of Knox County and remand this case for further proceedings.

Order granting new trial affirmed.

HEIPLE, J., concurs.

PRESIDING JUSTICE STOUDER, dissenting:

I respectfully disagree with the conclusion of my colleagues approving the action of the trial court. In my view the verdict of the jury in favor of the defendant should have been permitted to stand.

This case presents what might be aptly characterized as a garden variety jury case. It requires only a casual consideration of the evidence to ascertain there were substantial conflicts in the evidence such conflicts engendered by direct contradictions in the testimony of the two principal witnesses, i.e., plaintiff and defendant, together with evidence affecting the credibility of each. Resolution of the conflicts in the evidence is the classic and traditional role of a jury, and it did so in this case. Its resolution of the issues in favor of the defendant should not be disturbed by the trial court. In so doing the trial court has seen fit to disbelieve substantial portions of the defendant's testimony and the factors tending to diminish the credibility of the plaintiff's testimony. In *Jardinev v. Rubloff* (1978), 73 Ill. 2d 31, 43, 382 N.E.2d 232, the court declared "[a] verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable." There is nothing in the record of this proceeding convincing me that the jury's findings were unreasonable, arbitrary and not based upon the evidence. (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.) No claim is made of any trial error, procedural unfairness or other improper conduct which prejudicially affected the fact-finding process culminating in the jury's verdict.

The *Pedrick* rule recognizes that if there are factual disputes to be resolved by a jury, not only should they be submitted to the jury but the jury's resolution should not be disturbed. Of course if issues are such to require resolution by a jury such issues ought to be susceptible of resolution in favor of either party depending upon the jury's exercise of its function. If the jury may decide the case only in one way or in favor of only one party, then the issues were not properly submittable to a jury, and it is this salutory effect which is accom-

plished by the *Pedrick* rule.

*Mazowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32, appears on first impression to depart from the *Pedrick* rule and to some extent may be somewhat lacking in harmony with it, but as applied to its peculiar facts it is understandable. In *Mazowek*, the jury found in favor of the defendant, but on review the appellate court entered a directed verdict on the issue of liability in favor of the plaintiff and remanded the cause for a new trial on the issue of damages only. It should be noted that, although not discussed in *Mazowek*, it is usually not possible to separate liability from damages in a tort case, so that direction of a verdict on the issue of liability is usually inappropriate. Yet in *Mazowek* this is what had occurred as a result of the appellate court decision, so that we have the successful party in the trial court now having to argue at least in part that a new trial generally should have been granted.

Finally, even if the manifest weight of the evidence was an appropriate issue in this case, I conclude, both from the statement of facts and the majority opinion and my comments about the facts earlier in this opinion, that the jury's verdict was not against the manifest weight of the evidence. I would therefore reverse the trial court's order granting plaintiff a new trial and would direct that judgment be entered in favor of the defendant on the verdict of the jury.