RONALD COURTNEY, Plaintiff-Appellant, v. ALLIED FILTER ENGI-
NEERING, INC., Defendant-Appellee.

First District (1st Division) No. 1—87—3622

Opinion filed March 27, 1989.

Katz, Friedman, Schur & Eagle, of Chicago (David E. Rapaport, of counsel), for appellant.

Law Offices of James J. Desveaux, of Chicago (James J. Desveaux and Angela M. Kalamaras, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This negligence action is before this court on Ronald Courtney's (plaintiff's) petition for leave to appeal the trial court's order granting a new trial following the judgment it entered for plaintiff from a jury's $277,000 damage award, reduced to $199,040 to correspond to the jury's 28% comparative negligence finding. Allied Filter Engineering, Inc. (defendant), pursuant to Supreme Court Rule 306(a)(2) (107 Ill. 2d R. 306(a)(2)), requests that this court reverse the trial court's order denying its motions for directed verdict and for judgment notwithstanding the verdict. For the reasons set forth below, we reverse the trial court's order granting a new trial and remand this case with directions to the trial court to reinstate the judgment in favor of plaintiff.

The record reveals that defendant, a manufacturer of diesel engine filters, has a shipping and receiving area on its premises at 811 Golf Lane in Bensenville, Illinois, for truck deliveries. This area includes two indoor truck bays, each of which is equipped with a dockplate that forms a bridge between the dock and rear of the trailer

when it is placed into an up position and, when down, forms a 90-degree angle with a sharp edge. Defendant followed the standardized procedure in the industry for unloading palletized freight, namely, the company receiving the material unloads the material. Defendant had full-time employees who operated forklift trucks to unload trailers, and it forbad outside drivers from operating its equipment.

Plaintiff, a truck driver for Motor Freight Express, testified to the following. On July 23, 1981, at approximately 10:40 a.m., he arrived at defendant's shipping and receiving area to deliver palletized freight. At the direction of Jimmy Heath, defendant's supervisor in the receiving area, plaintiff pulled into the west truck bay. His trailer was positioned against the bumpers on the dock, leaving a gap of approximately five inches between the trailer's rear and the sharp, exposed edge of the lowered dockplate.

Heath then refused to unload the truck. He placed an empty skid near the edge of the dock and told plaintiff to stack the boxes on it. Heath did not raise the mechanical dockplate or make the forklift available to plaintiff. Plaintiff also did not have a "hand jack" or a "portable dockplate," which Motor Freight truck drivers carried in their trailers when they knew in advance that a customer would not unload.

Upon Heath's refusal, plaintiff telephoned Gerard Anastasia, his supervisor at Motor Freight Express, who told him to solicit defendant's employees to unload the truck or, if unsuccessful, deliver the freight in some other way. Following Heath's second refusal to unload and to raise the dockplate, plaintiff loosened the vertical and horizontal bands which stabilized the 27 cartons that stood six feet high and weighed approximately 40 pounds each.

As plaintiff carried one of the boxes toward the dock and the skid, some of the boxes fell and struck him in the mid-back. The boxes knocked him over, and his right knee landed in the space between the back of the truck and the dockplate. The front of plaintiff's knee forcefully struck the sharp edge of the dockplate, causing him immediate pain and swelling.

Dr. Robert Kaminsky, a board-certified orthopedic surgeon, testified on plaintiff's behalf as his primary treating physician. Kaminsky first examined plaintiff on July 27, 1981, upon a referral from plaintiff's family physician. At that time, plaintiff related his accident at work and complained of pain in his knee. Plaintiff again complained of pain in his knee on a September 10 return visit. Unable to diagnose plaintiff's condition from these examinations, Kaminsky recommended plaintiff undergo an arthroscopic procedure. From this procedure per-

formed on September 24, 1981, Kaminsky diagnosed plaintiff's condition as chondromalacia of the patella, a softening of the cartilage caused by a sudden increase in pressure between the back of the kneecap and the femur. The arthroscopic procedure, however, proved unsuccessful, and plaintiff's kneecap was removed on April 20, 1982.

Kaminsky testified that in his expert opinion the trauma of July 23, 1981, either caused the damage to plaintiff's knee or aggravated a preexisting condition. On cross-examination, Kaminsky admitted that it is possible that chondromalacia could develop from mere wear and tear or a twisting of the knee and also stated that he could not determine from mere observation when or how the condition developed. He further testified that plaintiff suffers permanent disability which prevents him from returning to work as a truck driver.

At the time of the accident, plaintiff was 33 years of age and had been a truck driver for 13 years, earning approximately $33,000 in the preceding year. Plaintiff has a two-year high school education and has no other special skills, training or work experience. Plaintiff was unable to work from the date of the accident until February 1, 1983. Since then, he has set up his own limousine business, which has been unsuccessful to date. Plaintiff now drives a school bus at a salary $17,000 less than he made as a truck driver.

Before this case was submitted to the jury, the trial court entered a partial directed verdict against plaintiff on all of the allegations in his complaint[1] except the claim that defendant was negligent in exposing the plaintiff to an unreasonably dangerous condition by failing to raise the dockplate. The court submitted to the jury this single theory of negligence, along with defendant's affirmative defense that plaintiff was contributorily negligent in removing a band from a pallet of items which were not properly stacked, in failing to use a dockplate that was available, in unloading the load from his truck, and in failing to keep a proper lookout for his own safety.

In ruling on defendant's post-trial motions following the jury's

---

[1]Plaintiff does not raise the issue of the court's order directing the verdict against plaintiff on his other negligence theories because any error was rendered harmless by the jury verdict. The court entered a directed verdict as to the following allegations in plaintiff's second amended complaint: (1) defendant negligently refused to unload the cartons from the trailer; (2) defendant negligently exposed plaintiff to unreasonably dangerous conditions by allowing plaintiff to unload his truck without proper tools or assistance; (3) defendant negligently failed to provide plaintiff with a safe place to work or with tools and assistance to safely unload the trailer; (4) defendant negligently failed to provide a forklift operator and forklift truck to unload the single pallet; (5) defendant negligently failed to raise the dock plate before allowing plaintiff to unload his trailer.

award to plaintiff, the trial court stated that it believed that the verdict was against the manifest weight of the evidence, commenting that there was no breach of any duty owed to plaintiff and that plaintiff assumed any risk. The court also voiced concern over its failure to instruct the jury with regard to the directed verdict on the other negligence theories.

On appeal, we will first determine whether the jury's finding was contrary to the manifest weight of the evidence so as to justify a new trial (*Doubet v. Morgan* (1984), 122 Ill. App. 3d 431, 461 N.E.2d 62), or, as defendant urges, whether the evidence viewed in a light most favorable to plaintiff so overwhelmingly favors defendant that a contrary verdict could never stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504). We will then address whether the trial court's failure to specially instruct the jury as to the special directed verdict or whether other errors raised by defendant justify granting a new trial.

 In reviewing whether the plaintiff sufficiently established the elements necessary to sustain his negligence claim, we begin with defendant's contention that it did not breach any duty owed to plaintiff. It is clear that defendant owed plaintiff, a business invitee on his premises, a general duty to use reasonable and ordinary care in keeping the property reasonably safe. (*Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 473, 173 N.E.2d 443, 445.) The Restatement (Second) of Torts, which has been incorporated into the common law of Illinois (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 353 N.E.2d 465; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538), more specifically defines the duty owed by possessors of land as to conditions on their land:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343 (1965).

Defendant initially urges that the lowered dockplate was not an unreasonably dangerous condition, and, as such, it could not have breached any duty by failing to protect plaintiff from the condition. Photographs introduced at trial, however, depict the sharp edge on the plate that extended out at a 90-degree angle when in a lowered

position. The evidence also indicated that the dockplate was located in an area where defendant positions trucks for unloading. We find that this evidence sufficiently established an unreasonable risk of harm.

■ Defendant next argues that even assuming the lowered dockplate was an unreasonably dangerous condition, it did not breach any duty owed to plaintiff because the lowered dockplate was an open and obvious condition. It asserts that the instant case is analogous to *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868, 423 N.E.2d 942, wherein the appellate court held that the defendant did not owe a duty to warn or protect the plaintiff from the condition because any risk confronted by the truck driver who was injured standing on a "ramp" with an incline behind a truck that rolled backwards was open and obvious.

Plaintiff, while he concedes that the condition of the dockplate was open and obvious, argues that defendant nonetheless owed him a duty because it had reason to expect that he would still suffer physical harm. For this proposition, plaintiff relies on the section 343 of the Restatement (Second) of Torts quoted above and its companion section, which addresses known or obvious dangers:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.) (Restatement (Second) of Torts §343A (1965).)

Plaintiff further cites comment *f* to the Reporter's Notes to section 343A, which explains when a possessor may have reason to expect harm despite obvious dangers:

> "Such reason to expect harm *** may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts §343A, comment *f* (1965).

In the case at bar, plaintiff introduced evidence that defendant directed plaintiff's truck to the dock, leaving approximately a five-inch gap between the edge of the dockplate and the rear of the truck. Defendant's employee suggested that plaintiff unload the truck by

hand and placed a skid dockside for that purpose. Defendant was aware that plaintiff's truck contained an unstable load. This evidence amply demonstrates that defendant should have been aware that plaintiff might be distracted or suffer harm when attempting to unload his truck notwithstanding the obvious risk. Thus, plaintiff adequately established the existence of a duty as described by sections 343 and 343A, and the evidence was sufficient for the jury to have found that defendant breached the duty of care owed to plaintiff.

Our finding is consistent with Illinois case law. *Sepesy*, mentioned above, is distinguishable from the instant case in that the plaintiff presented no evidence there showing that the defendant had reason to expect that the plaintiff would suffer harm notwithstanding the open, obvious risk. The court noted in *Sepesy* that the specific risk taken by the plaintiff was the act of standing between two trucks and that no evidence was presented showing any distraction or reason for the defendant to suspect that the defendant would be distracted. *Sepesy*, 97 Ill. App. 3d at 874, 423 N.E.2d at 947.

The case at bar is more analogous to the case cited by plaintiff, *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 489 N.E.2d 35. In *Shaffer*, the plaintiff, who had earlier cut a hole in the floor for remodeling work at the defendant's home, fell into the uncovered hole when moving a truss. The court reasoned there that the evidence sufficiently established that the defendant breached a duty owed to the plaintiff because the defendant had reason to believe that the plaintiff might be distracted and forget the danger or fail to guard himself against it.

■ We next consider defendant's contention that plaintiff did not prove that defendant's actions actually and proximately caused his injury. The burden is on the plaintiff to show to a reasonable certainty that the defendant's conduct was the actual cause of the injury. (*Morton v. F.B.D. Enterprises* (1986), 141 Ill. App. 3d 553, 490 N.E.2d 995.) Defendant asserts that the shifting of the load was the sole cause of the injury and that plaintiff's treating physician's testimony did not establish otherwise. Defendant directs us to Kaminsky's testimony that plaintiff's type of injury could be caused by a twisting or wear and tear of the knee and that he could not determine the cause of the injury from merely observing the knee.

Defendant's argument ignores the competent evidence presented here by plaintiff. Plaintiff testified that when the boxes knocked him over, his right knee landed in the space between the dockplate and the back of the truck and that his knee forcefully struck the sharp edge. Plaintiff's treating physician stated that plaintiff's type of in-

jury may be caused by direct trauma that causes pressure on the kneecap so that its underside is forced against the femur, causing the cartilage to soften. He also unequivocally stated that in his opinion, the trauma in issue here either caused the right knee damage or aggravated a preexisting condition. This evidence demonstrates to a reasonable certainty that plaintiff's contact with the dockplate caused his injury.

Defendant also argues that its actions did not proximately cause plaintiff's injuries because plaintiff's load's shifting and falling, a subsequent independent occurrence, proximately caused his injury. Ordinarily, the question of proximate cause is one of fact for the jury, although it may be treated as a matter of law in undisputed fact situations in which a court has deemed an intervening event to be so unforeseeable that the first wrongdoer could not have reasonably anticipated a third party to act and cause harm to another. (*Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 96, 497 N.E.2d 433, 437.) It is further established that an intervening cause, one that combines with another negligent act to cause plaintiff's injury, does not relieve a person from responsibility for a negligent act when the intervening cause is foreseeable. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 90, 508 N.E.2d 1201, 1211.

In the case at bar, it is not clearly unforeseeable that a trucker would attempt to manually unload a palletized freight, or that the boxes would tumble over, when defendant refused to assist the trucker and placed a skid near the dock so that the trucker could manually unload his delivery. Nonetheless, defendant argues that it could not have proximately caused the injury because it only created a condition that had come to rest in a position of apparent safety before a new force intervened. The principle that defendant posits has been discredited and remains only in fact situations where a new force intervenes after the forces set in operation by the defendant have come to rest in a position of apparent safety. (*Duncavage*, 147 Ill. App. 3d at 97, 497 N.E.2d at 438; *Orrico v. Beverly Bank* (1982), 109 Ill. App. 3d 102, 108, 440 N.E.2d 253, 258.) This principle is inapplicable to the instant case because the force put in operation by defendant, the unreasonably dangerous condition, was never at rest nor was plaintiff in a position of safety.

Accordingly, we hold that the trial court erred in finding the jury's verdict to be against the manifest weight of the evidence.

We now turn to the question of whether the trial court's failure to specially instruct the jury as to the partial directed verdict warrants its granting a new trial. Defendant contends that the lack of

an instruction prejudiced him by allowing the jury to consider evidence as to nonissues, namely, defendant's breach of duty in not unloading plaintiff's trailer or providing assistance to plaintiff. Since the issue instructions clearly informed the jury as to the single claim of negligence and defendant was allowed to argue the question of the directed verdict to the jury, we find that defendant did not suffer prejudice from a lack of an instruction in this regard. In any event, any error would not justify a new trial because defendant did not submit an instruction to the court and thereby waived the issue. See *Mackey v. Daddio* (1985), 139 Ill. App. 3d 604, 487 N.E.2d 1167.

■ We next address whether the trial court committed any other errors that would justify granting a new trial. With regard to the trial court's selection of jury instructions, defendant first asserts that the trial court denied defendant its right to have its theory of the case instructed to the jury by its refusal to submit non-Illinois Pattern Jury Instructions (non-IPI) Nos. 4 and 5 tendered by defendant. Non-IPI No. 4, reciting a Department of Transportation regulation that a person shall not drive a vehicle unless its cargo is properly secured, stated that the jury could consider this fact on the contributory negligence issue. As plaintiff points out, this regulation is irrelevant to the case at bar because the truck was not being operated at the time of the occurrence.

Non-IPI No. 5 provided: "It is the rule in Illinois that where a defendant's negligence, if any, creates merely a passive condition that makes an injury possible, but is not the cause of the injury, the defendant cannot be held liable for the plaintiff's injury." The cases defendant cites for this principle do not mandate an instruction to this effect. We find that the Illinois Pattern Jury Instructions, Civil, Nos. 12.04, 15.01 (2d ed. 1971) (hereinafter IPI Civil 2d) submitted by the court on the issue of proximate cause sufficiently informed the jury of the existing law.

Defendant also asserts that the court erred in giving plaintiff's IPI Civil 2d Nos. 16, 21, 27, and 31. Defendant argues that No. 16 was duplicative of No. 12, thereby overemphasizing the duty owed by defendant and suggesting that defendant had a heightened duty because premises were involved. No. 12 recites that "[i]t was the duty of defendant before and at the time of the occurrence to use ordinary care for the safety of the plaintiff; that means it was the duty of the defendant to be free from negligence." (IPI Civil 2d No. A10.04 (Supp. 1981).) No. 16 states: "The occupant of property owed the plaintiff the duty to exercise ordinary care to keep the property reasonably safe for use by the plaintiff." (IPI Civil 2d No. 120.06.) We

reject defendant's contention that these instructions suggest a heightened duty on defendant's part, as the one merely recites an individual's general duty and the other more specifically defines that duty as applied to possessors of land.

Defendant further argues that the evidence does not support submitting future damages issue instructions Nos. 21, 27, and 31, to the jury. (IPI Civil 2d Nos. 30.01, 34.04, A45.06 (1981 Supp.).) Impairment of earning capacity or loss of earnings is recoverable only when reasonably certain to occur in the future. (*Christou v. Arlington Park—Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 432 N.E.2d 920.) Defendant, citing *Henricks v. Nyberg, Inc.* (1976), 41 Ill. App. 3d 25, 353 N.E.2d 273, argues for the first time on appeal that Dr. Kaminsky's prognosis cannot support the test of reasonable certainty since it was formed over four years ago.

The instant case is distinguishable from *Henricks*. There, the doctor had treated the plaintiff for only a period of three weeks. In the instant case, Kaminsky, after treating plaintiff for two years and after three surgeries and extensive rehabilitation, concluded upon plaintiff's release that his condition had reached a permanent state. He also reviewed the findings of Dr. Dwyer, a doctor who examined plaintiff in 1986 at defendant's request and found that plaintiff's condition had not materially changed from when he released plaintiff from his care in 1983.

Finally, defendant directs us to the trial court's denial of its request that the court *voir dire* a juror who explained her late arrival to court by stating that her daughter had sustained injuries after being hit by a car the previous evening. We do not believe that the court's failure to *voir dire* the juror in this regard justifies granting a new trial.

In summary, we hold that the verdict was not against the manifest weight of the evidence to justify the court's granting a new trial, nor are the court's failure to specially instruct the jury, its failure to *voir dire* a juror, and its selection of jury instructions grounds for a new trial. Accordingly, we reverse the trial court's order granting a new trial; affirm its denial of defendant's motions for a directed verdict and for judgment notwithstanding the verdict; and remand this case with directions to the trial court to reinstate the judgment in favor of plaintiff.

Affirmed in part; reversed and remanded with directions.

CAMPBELL and O'CONNOR, JJ., concur.