**AMERICAN PFAUTER, LTD., Plaintiff,**

v.

**FREEMAN DECORATING COMPANY/THE FREEMAN COMPANY, Chicago I & D Service, Inc., South End Cartage Company, Curtis Warehouse Co., Curtis Companies, William J. Curtis Co., Curtis Machinery Movers, Inc., W.J. Curtis Machinery Movers, Inc. and Anthony Fragale, Defendants.**

**FREEMAN DECORATING COMPANY/THE FREEMAN COMPANY, Cross–Plaintiff,**

v.

**SOUTH END CARTAGE COMPANY, Anthony Fragale, Chicago I & D Service, Inc. and W.J. Curtis Machinery Movers, Inc., Cross–Defendants.**

No. 91 C 3686.

United States District Court, N.D. Illinois, E.D.

July 22, 1992.

---

Scott W. Hoyne, Johnson & Bell, Ltd., Chicago, Ill., for American Pfauter, Ltd., plaintiff.

Michael E. Dowd, Joel S. Ostrow, Robert C. Yelton and Lawrence R. LaSusa, Dowd & Dowd, Ltd., Chicago, Ill., for Freeman Decorating Co./The Freeman Co., defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff American Pfauter, Ltd. ("American Pfauter") seeks to recover damages incurred when its gear-shaping machine fell off a flatbed trailer. In Count I of its second-amended complaint, American Pfauter alleges that defendant Freeman Decorating Company ("Freeman") negligently loaded the machine onto the flatbed and, as such, is liable for the damages.[1] Presently before the court is Freeman's motion for summary judgment. For the reasons stated below, the motion is denied.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

From September 5, 1990 to September 13, 1990, American Pfauter, an Illinois corporation engaged in the business of manufacturing and selling machinery, displayed a Lorenz gear-shaping machine, Model No. LS 154 CNC, at a trade show held at McCormick Place in Chicago, Illinois. According to American Pfauter, it retained Chicago I & D Services ("Chicago I & D"), an Illinois corporation engaged in the business of trade-show management, to dismantle the machine after the show and transport it to a specified warehouse. American Pfauter contends that on or about September 18, 1990, Chicago I & D employed defendant Freeman to dismantle and load the machine onto a truck owned and operated by South End Cartage Company ("South End").

On or about September 20, 1990, the machinery was placed on the flatbed trailer owned by South End, purportedly "se-

---

1. Specifically, Count I alleges that Freeman committed one or more of the following acts: (1) failed to load the machine in a proper, safe and workman-like manner; (2) failed to warn the Plaintiff that said machine was loaded in an improper, unsafe and in an unworkman-like manner; and (3) failed to warn the driver of the truck that the machine was loaded in an improper, unsafe and unworkman-like manner. Second–Amended Complaint ¶ 17, at 7–8.

cured" by a series of steel chains and nylon straps. Prior to his departure from McCormick Place, Anthony Fragale, South End's driver, noticed that the machine appeared to be "unbalanced." Nonetheless, Fragale drove the trailer and attached machinery to a warehouse located at 5000 S. Central Avenue, Chicago, Illinois. Shortly after the machinery arrived at the warehouse, it was reloaded and repositioned onto the trailer by individuals employed by Chicago I & D. The machine appeared to be balanced after the refastening. The Chicago I & D employees, however, merely threw nylon straps over the machine, foregoing the use of the steel chains to secure it to the flatbed.

Once the machine appeared to be secure, Fragale proceeded to move the trailer to one of the warehouse's dock areas. In order to reach this area, Fragale was forced to pull out onto Central Avenue, execute a u-turn and then back the truck into the dock area. While Fragale was making a wide right turn, the flatbed trailer "jackknifed," sending the machine tumbling to the ground. American Pfauter claims to have sustained property damages in excess of $300,000.

### III. Discussion

Freeman has advanced two arguments in support of the instant motion for summary judgment. First, Freeman argues that no evidence has been set forth indicating that Freeman was responsible for the loading of the machine onto the flatbed trailer at McCormick Place. Second, Freeman asserts that the allegedly negligent acts did not proximately cause the ensuing damage to the machinery. We address each issue seriately.

### 1. The Initial Loading

In response to Freeman's demand for "evidentiary facts" suggesting that it had any involvement in the loading, rigging or transporting of the machine in question, American Pfauter proffers three specific groupings of evidence: (1) the unsworn statement of Larry Gibas, an employee of Chicago I & D; (2) the deposition testimony of Thomas Angarola, a former employee of Freeman; and (3) two work orders suggest-

ing that Freeman was responsible for the loading of the machine. Freeman contends, however, that the exhibits described above do not meet the requirements of Fed.R.Civ.P. 56, permitting consideration of "any material that would be admissible or usable at trial." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2721, at 40 (1983). While we agree that this court may not consider in opposition to the instant motion for summary judgment the unsworn statement of Larry Gibas, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n. 19, 90 S.Ct. 1598, 1609 n. 19, 26 L.Ed.2d 142 (1970) (unsworn statements do not meet the requirements of Rule 56(e)); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir.1985) (same), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986), the same cannot be said of the deposition testimony of Thomas Angarola nor the work orders.

Taken under oath, Angarola's deposition meets the certification requirement of Rule 59(e). *See Pfeil*, 757 F.2d at 860. Further, Angarola's testimony implicates Freeman in the loading of American Pfauter's gear-shaping machine. *See* Angarola Deposition at 49–52. To counter this implication, Freeman essentially attacks Angarola's credibility. Additionally, Freeman points out that Angarola mentioned another company who was responsible for loading machines from the trade show. In determining whether to accept deposition testimony for the purposes of a motion for summary judgment, however, a court should not resolve conflicts or questions of credibility "unless the opponent's evidence is too incredible to be believed by reasonable minds." *Baltz v. Shelley*, 661 F.Supp. 169, 179 (N.D.Ill. 1987). Finding Angarola's statements not inherently incredible, we can only conclude that the deposition creates a genuine issue of material fact regarding Freeman's responsibility for the loading of the machine.

Angarola's testimony is not the only link between Freeman and the loading at McCormick Place. American Pfauter has attached to its response, as Exhibits B and C, two work orders indicating that they had performed loading work at the trade show

on September 14 and 18, 1990. Freeman objects to the consideration of these documents on the grounds that they have not been authenticated. *See Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977) (exhibits cannot be authenticated for purposes of summary judgment simply by their inclusion in legal memoranda). In the absence of authentication, courts will consider, in the context of a summary judgment motion, certain business documents that give "a prima facie aura of reliability." *See McLaury v. Duff and Phelps, Inc.*, 691 F.Supp. 1090, 1096 n. 2 (N.D.Ill.1988); *Oglesby v. Coca–Cola Bottling Co.*, 620 F.Supp. 1336, 1345 (N.D.Ill.1985) (citing *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 418 F.2d 669, 670 (5th Cir.1969)). The work orders presented by American Pfauter are printed forms bearing "The Freeman Company" name at the top of the form. They specify American Pfauter as the company requesting "rigging" (*i.e.*, loading) work at the specific trade show in question, and mention the machine to be moved and its approximate weight. Concluding that these documents impart "a prima facie aura of reliability," we find that they, like the Angarola deposition, create a genuine issue of material fact respecting Freeman's role in the loading of the machine at McCormick Place and, as such, preclude summary judgment.

### 2. Proximate Causation

Freeman's second concern presents the single most difficult question in negligence law: under what circumstances can an act of negligence be regarded as a "proximate cause" of the ensuing injury? In the instant case, the connection between Freeman's negligence [2] in the loading of the machine at McCormick Place and the damage of the machine at the Central Avenue warehouse is clouded by three intervening acts of third parties—acts which fairly may be characterized as negligent conduct in themselves: (1) although recognizing the unbalanced load prior to leaving McCormick Place, Fragale proceeded to transport the machine to the warehouse without any attempt to rectify the matter; (2) during their attempt to balance the load, Chicago I & D employees failed to secure the machine with the steel chains used in the initial transportation; and (3) while attempting a u-turn on Central Avenue, Fragale "jackknifed" the truck.

In formulating a definition of "proximate causation," it is import to distinguish that concept from "cause in fact." Cause in fact, often expressed as "but for" causation, involves an inquiry into the factual connection between the defendant's breach of duty and the plaintiff's injury. Presupposing such a factual linkage between the negligent act and the resulting injury, the issue of proximate causation addresses a question of policy: at what point along the chain of events stemming from, and linked to, the initial breach does the resulting harm become, in some manner, too "remote" so as to release the defendant from legal accountability for that harm? The factors entering into this determination are as varied as the factual circumstances giving rise to the question: "It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." 1 Street, *Foundations of Legal Liability* 110 (1906); *see also* Leon Green, *The Duty Problem in Negligence Cases*, 28 Colum.L.Rev. 1014, 1034 (1928) (describing judicial efforts to limit liability in terms of "duty," a concept including such factors as (1) the administrative factor, (2) the ethical or moral factor, (3) the economic factor, (4) the prophylactic factor, and (5) the justice factor).

As do a majority of state courts, the Illinois Supreme Court has defined proximate causation in terms of an all purpose principle of "reasonable foreseeability":

> " 'The injury must be the natural and probable result of the negligent act or omission and be of such a character *as an ordinarily prudent person ought to have foreseen* as likely to occur as a result of the negligence, although it is

---

**2.** For the purposes of Freeman's proximate causation argument, the assumption is that the initial loading constituted negligence.

not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act.'"

*Kalata v. Anheuser–Busch Co.,* 144 Ill.2d 425, 435–36, 163 Ill.Dec. 502, 507–08, 581 N.E.2d 656, 661–62 (1991) (emphasis supplied) (quoting *Davis v. Marathon Oil Co.,* 64 Ill.2d 380, 395, 1 Ill.Dec. 93, 100, 356 N.E.2d 93, 100 (1976) (quoting *Neering v. Illinois Central R.R. Co.,* 383 Ill. 366, 380–81, 50 N.E.2d 497, 503 (1943))). "The intervention of independent concurrent or intervening forces will not break the causal connection if the intervention of such forces was itself probable or *foreseeable."* *Id.* 144 Ill.2d at 436, 163 Ill.Dec. at 508, 581 N.E.2d at 662 (emphasis supplied). The defendant bears the burden of demonstrating "that the intervening event was *unforeseeable* as a matter of law." *Davis,* 64 Ill.2d at 395, 1 Ill.Dec. at 100, 356 N.E.2d at 100 (emphasis supplied). Absent such a showing, proximate cause is "ordinarily a question of fact for the jury to decide." *Id.; Courtney v. Allied Filter Eng'g,* 181 Ill.App.3d 222, 229, 129 Ill.Dec. 902, 907, 536 N.E.2d 952, 957 (1st Dist.1989).

Thus, in the instant case, the critical question as defined by the Illinois courts is: Were the intervening acts of negligence on the part of Fragale and the Chicago I & D workers "reasonably foreseeable"? The difficulty facing this court comes in defining the principle of "foreseeability." Of the cases cited by the parties, as well as those independently gathered by this court, none set forth a practical test to guide in the distinction between the foreseeable and the unforeseeable.[3] Rather, the courts have used the term as a "verbal peg." Marshall S. Shapo, *A Representational Theory of Consumer Protection: Doctrine, Function and Legal Liability For Product Disappointment,* 60 Va.L.Rev. 1109, 1223 (1974).

[W]e must realize that both the reasonable man and his foreseeability are transparent fictions; their combination in a comprehensive formula is only a technique employed to submit the issue of negligence so that a jury is required to consider the total factual data of a case and determine whether defendant's conduct should be condemned and penalized.

Leon Green, *Foreseeability in Negligence Law,* 61 Colum.L.Rev. 1401, 1421 (1961). Although not without a purpose in the law, to convert "foreseeability" into an " 'all purpose' formula for determining the problem of responsibility in its totality must prove a vain attempt." *Id.* Instead of fashioning "foreseeability" as an all-inclusive or all-exclusive determinant of liability, courts must, and have in some instances, grapple with the underlying policy issues at hand. *See, e.g., Kirk v. Michael Reese Hosp. & Medical Center,* 117 Ill.2d 507, 526–27, 111 Ill.Dec. 944, 953, 513 N.E.2d 387, 396 (1987) (citing Leon Green, *Foreseeability in Negligence Law,* 61 Colum.L.Rev. 1401, 1423 (1961), for the proposition that a court's determination to limit liability must "reflect[ ] the policy and social requirements of the time and community"), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988).

The most obvious and relevant policy consideration in the instant case concerns the magnitude of the burden of guarding against the injury and the consequences of placing that burden upon Freeman. Clearly, the damage to the gear-shaping machine could have been prevented, likely with minimal burden. Freeman is in the business of loading large machinery, and was hired to do just that for the benefit of American Pfauter. The loading of such machinery requires specialized equipment, equipment presumably not in the possession of the average trucking company or trade-show management company. Within this context, a reasonable person could conclude as a matter of fairness and common sense that Freeman—a party deriving a commercial benefit from loading the machine, and arguably the party who could have prevent-

---

**3.** Indeed, as stated by Leon Green: "To attempt to draw the line between the foreseeable and the unforeseeable in the world of everyday affairs raises even more difficulties than the determination of where space leaves off and outerspace begins." Leon Green, *Foreseeability in Negligence Cases,* 61 Colum.L.Rev. 1401, 1413 (1961).

**352**

ed the accident at the least cost—bear responsibility for American Pfauter's loss. Accordingly, we cannot conclude as a matter of law that Freeman's negligence was not a proximate cause of the damage to the gear-shaping machine. Application of the concept of "proximate cause" to the circumstances of this case involves a value-laden determination properly left to the judgment of the trier of fact.

### IV. Conclusion

For the reasons set forth above, Freeman's motion for summary judgment is denied. It is so ordered.